# UNITED STATES DISTRICT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| ADAM U. STEINES, individually, and on behalf of all others similarly situated, and MIRANDA L. STEINES, individually, and on behalf of all others similarly situated, | Case No.: 6:22-CV-00629-RBD-GJK |
| Plaintiffs, | |
| v. | |
| WESTGATE PALACE, L.L.C., a Florida limited liability company, WESTGATE RESORTS, INC., a Florida corporation, and WESTGATE RESORTS, LTD., L.P., a Florida limited partnership, CENTRAL FLORIDA INVESTMENTS, INC., WESTGATE VACATION VILLAS, LLC, CFI RESORTS MANAGEMENT, INC., | CLASS ACTION<br><br>JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
<u>MOTION TO COMPEL ARBITRATION</u>**

Plaintiffs ADAM U. STEINES and MIRANDA L. STEINES (the "Steines Family"), hereby respond to Defendants WESTGATE PALACE, L.L.C.'s ("Westgate Palace"), WESTGATE RESORTS, INC.'s ("Westgate Resorts"), and WESTGATE RESORTS, LTD., L.P.'s ("Westgate Resorts Ltd."), CENTRAL FLORIDA INVESTMENTS, INC.'s ("CFI"), CFI RESORTS MANAGEMENT, INC's. ("CFI Resorts Management"), and WESTGATE VACATION VILLAS,

1

LLC's ("Vacation Villas") (referred to herein collectively as "Westgate" or "Defendants") Motion to Compel Arbitration ("MTC") [ECF No. 27] as follows:

## INTRODUCTION

Congress enacted the Military Lending Act to protect service members from predatory lending practices that have a documented impact on members of the armed forces and our Nation's military readiness.  Timeshare plans are among the most predatory agreements that impact our troops' financial strength.  These plans essentially require a lifetime commitment to escalating monthly fees and dues, exactly what Defendants have imposed on the Steines Family. The Steines Family filed this class action on behalf of military borrowers under the Military Lending Act, 10 U.S.C. § 987 ("MLA") who entered into agreements with Defendants to purchase timeshare interests financed by Defendants, but who were not provided any of the loan disclosures required by the MLA, were not provided accurate cost of credit financing disclosures, and were contractually mandated to submit to binding arbitration, which is prohibited by the MLA.

The MLA provides that any violation of its terms, including the imposition of a mandatory arbitration clause, makes the entire transaction *void ab initio* (i.e., the entire transaction never came into existence). Crucially, the MLA mandates specifically that unlawful arbitration provisions, including their delegation provisions, are void from their inception. Accordingly, if the

MLA applies, the agreement to arbitrate and its delegation clause were void from their inception (i.e., they never came into legal existence).[1]

Under Supreme Court authority, this Court must determine whether the MLA applies to Defendants' timeshare loan to the Steines Family, because its application will determine whether an agreement to arbitrate (and delegation clause) exists. This is a contract formation question which only this Court, and not an arbitrator, can decide. Courts facing challenges to the formation of arbitration agreements and included delegation provisions have uniformly decided contract formation issues rather than delegating them to arbitrators. This includes cases where federal statutes, including the MLA, were the reason that the arbitration clause and any included delegation provision were void from inception.

The Federal Arbitration Act ("FAA") does not rescue Defendants. While it is true, as Defendants state, that the FAA has increasingly served to close off most routes to challenging mandatory arbitration, the MLA is an exception. In the MLA, Congress specifically prohibited mandatory arbitration and expressly preempted the FAA. 10 U.S.C. § 987(d)(1), (e)(3) & (f)(4). Accordingly, this Court must determine whether the MLA applies to Defendants' timeshare

---

[1] The Steines Family does not deny they executed a document entitled Arbitration Addendum. In fact, they plead it as a violation of the MLA. Rather, they contend that it never became a legally valid agreement.

3

loan to the Steines Family in order to rule upon the legal existence of the arbitration clause and its delegation provision. When it does, it will conclude that the MLA applies, and that no arbitration agreement (and no delegation clause) exists.

## ARGUMENT AND AUTHORITIES

### I. THIS COURT MUST DETERMINE WHETHER THE ARBITRATION AGREEMENT AND DELEGATION CLAUSE EVER CAME INTO EXISTENCE, WHICH REQUIRES IT TO DETERMINE IF THE MLA APPLIES.

This Court must first determine whether the MLA applies to Defendants' timeshare loan to the Steines Family in order to determine whether an agreement to arbitrate (and delegation clause) exists between the parties. If the Court determines that the MLA applies, the arbitration agreement and delegation provision were void from their inception. Defendants' invocation of the FAA does not change this analysis, because the MLA expressly excludes application of the FAA to loans covered by it. Put another way, Congress intended the MLA to exclude and override the FAA when it comes to loans made to active-duty service members.

### A. Supreme Court Decisions Require This Court to Resolve Whether the Arbitration Agreement and Delegation Clause Were Void from Inception.

The Supreme Court has held that "[i]f a party challenges validity under [FAA] § 2 of the precise agreement to arbitrate at issue, the federal court must

4

consider the challenge before ordering compliance with the agreement under § 4." *Rent-A-Center. West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). This principle also applies to a delegation clause, because "[a] delegation clause is merely a specialized arbitration agreement, and the Act 'operates on this additional arbitration agreement just as it does on any other.'" *New Prime v. Olivera*, 139 S. Ct. 532, 537 (2019) (citation omitted) (holding the court must decide whether contracts are exempt under § 1 of the FAA notwithstanding the existence of a delegation provision which the plaintiff had not specifically challenged).

> The Supreme Court noted:
>
> While a court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional. If two parties agree to arbitrate future disputes between them and one side later seeks to evade the deal, §§ 3 and 4 of the Act often require a court to stay litigation and compel arbitration "accord[ing to] the terms" of the parties' agreement. But this authority doesn't extend to *all* private contracts, no matter how emphatically they may express a preference for arbitration. . . A parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act authorizes a court to stay litigation and send the parties to an arbitral forum.

*Id.* at 537-38.

The Supreme Court in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, held that the court must decide the existence and validity of an arbitration agreement. 139 S. Ct. 524, 530 (2019). While the Supreme Court ultimately upheld the delegation clause in that case, it held that "before referring a

5

dispute to an arbitrator, *the court determines whether a valid arbitration agreement exists*." *Id.* (citing 9 U.S.C. § 2) (emphasis added).

This threshold question of whether a valid arbitration agreement exists is distinct from the question of "arbitrability" which is "whether [the parties'] arbitration agreement applies to the particular dispute." *Id.* at 527. Because "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, [only] then a court *may not* decide the arbitrability issue." *Id.* at 530 (emphasis added). The Supreme Court expressly cautioned that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 531 (citation omitted).

Significantly, whenever a plaintiff, as here, challenges the existence of a valid agreement to arbitrate and delegation provision, only a court, and not an arbitrator, may decide that challenge notwithstanding the presence of the delegation clause.² In *Rent-A-Center. West, Inc.*, the Court gave fraud in the inducement as example of this principle, "[i]n *Prima Paint*, for example, if the claim had been 'fraud in the inducement of the arbitration clause itself,' then the court would have considered it. (citation omitted). 'To immunize an

---

² In specifically challenging a delegation clause, as the Steines Family does here, a party may rely on the same arguments that it employs to contest the enforceability of the arbitration agreement as a whole. *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332, 338 (4th Cir. 2020).

6

arbitration agreement from judicial fraud on the ground of fraud in the inducement would be to elevate it over other forms of contract.' (citation omitted)." 561 U.S. at 71.

In *Parm v. Nat'l Bank of Cal., N.A.*, the Eleventh Circuit held that the arbitration agreement and its included delegation clause were illusory and thus never came into existence because they required arbitration before a nonexistent arbitration forum. 835 F.3d 1331, 1338 (11th Cir. 2016). In so holding, it necessarily held that contract formation is for the courts, and not an arbitrator, to address notwithstanding the presence of a purported delegation clause. *Id.* at 1334-35.

Similarly, in *Gibbs*, the Fourth Circuit held that the court, not an arbitrator, must decide whether the prospective waiver of substantive federal rights rendered the arbitration agreement and delegation clause void from their inception as against public policy. 967 F.3d at 339. The Fourth Circuit thus reaffirmed that it is courts who decide whether an arbitration agreement and delegation clause were void from inception--never came into legal existence. *Id.*

Here, the Steines Family argues that the MLA renders the arbitration agreement and its delegation clause void from their inception. The MLA declares that "[i]t shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which--

7

… (3) the creditor requires the borrower to submit to arbitration …." 10 U.S.C. § 987(e)(3). Thus, the purported arbitration agreement and the delegation clause it contains, are unlawful under the MLA because they "require" the Steines Family to submit both their MLA claims, and the arbitrability of those claims, to binding arbitration.

As a "Penalty and Remedy" for this and other violations of its requirements, the MLA mandates that "[a]ny credit agreement, promissory note, *or other agreement* prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3) (emphasis added). The purported arbitration agreement and its delegation clause are an "*other agreement* prohibited under this section" of the MLA. Thus, they are "void from the inception." *Id*. This Court must determine whether the arbitration agreement and delegation clause were void from their inception, which requires it to first determine whether the MLA applies to Defendants' timeshare loan to the Steines Family

Defendants, on the other hand, ask this Court to put the horse before the cart and ignore that if the MLA applies to the Steines Family's timeshare loan, the delegation clause never existed. Instead, they ask the Court to skip that necessary step and hold that the perhaps non-existent delegation clause require an arbitrator to decide the MLA's application to the Steines Family's timeshare loan.

8

Defendants rely upon a Seventh Circuit decision, *K.F.C. v. Snap, Inc.*, 29 F.4th 835 (7th Cir. 2022), to support their contention that a defense to enforcement is a merits issue to be determined by the arbitrator. MTC at 13, 15. In *K.F.C.*, a minor entered into an agreement with Snapchat service which contained an arbitration clause. *Id.* at 837. The district court ordered the parties to arbitration because the court found that youth is *a defense* to contract enforcement which an arbitrator may decide. *Id.* On appeal, the Seventh Circuit held that a challenge to the enforceability of an arbitration agreement is a defense which goes to the arbitrator if so delegated, while challenges to existence of an arbitration agreement and included delegation provision always go to the court. *Id.* at 838-39.

This case is different from K.F.C., because the Steines Family in this case contends that the MLA rendered the purported arbitration agreement and delegation clause void from their inception. The application of the MLA is not simply a defense to enforcement of the purported arbitration agreement and delegation clause – it is a challenge to their existence. Simply put, an argument that an arbitration agreement and delegation provision were void from its inception must be decided by a court because it goes to whether a valid agreement exists, while an argument that an agreement exists but is voidable or unenforceable can be delegated to an arbitrator. Because the Steines Family challenges the existence of an agreement to arbitration and delegation

9

provision, the issue is for the Court and not the arbitrator to decide, which requires the Court to decide the applicability of the MLA to the Steines Family's timeshare loan.

**B.  To Determine Whether the Purported Arbitration Agreement (and Delegation Clause) Ever Came into Existence, the Court Must Decide Whether the MLA Applies to Defendants' Loan to the Steines Family.**

In cases where plaintiffs bring claims under statutes that prohibit arbitration, courts have uniformly held that they, and not arbitrators, must decide the applicability of the statute to the claims in issue. For example, many states have laws prohibiting the inclusion of arbitration clauses in insurance policies. *See, e.g., LeCann v. Aliera Companies, Inc.*, 2021 WL 2554942, at *1 (N.D. Ga. June 22, 2021), *appeal disms'd*, 2021 WL 6621056 (11th Cir. Nov. 15, 2021) (addressing existence of arbitration agreement and delegation clause in light of O.C.G.A. § 9-9-2(c)(3) prohibiting arbitration clauses in insurance policies in Georgia). The FAA does not preempt such statutes, because the McCarren-Ferguson Act reverse preempts the FAA. *Id.*, at *13-14 (citing 15 U.S.C. § 1012(b)). The courts have held that they, not arbitrators, must decide the applicability to the plaintiffs' claims of those state laws prohibiting arbitration. *See, e.g., Minneland Priv. Day Sch., Inc. v. Applied Underwriters Captive Assur. Co., Inc.*, 867 F.3d 449, 455-56 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 926 (2018); *LeCann*, 2021 WL 2554942, at *17.

10

Five federal statutes, including the MLA and the Dodd-Frank Act ("DFA"), limit the use of mandatory arbitration agreements, with those two banning them outright. *See* A. McWhorter, *A Congressional Edifice: Reexamining the Statutory Landscape of Mandatory Arbitration*, 52 Colum. J.L. & Soc. Probs. 521, 534 (2019). In cases brought under the portions of the DFA containing the arbitration ban, courts and not arbitrators have decided the applicability of the statue to the plaintiffs' claims. *See, e.g., Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 423 (S.D.N.Y. 2012); *Pezza v. Investors Capital Corp.*, 767 F. Supp. 2d 225, 234 (D. Mass. 2011).

Only a couple of courts have decided motions to compel MLA claims, and they both decided the applicability of the MLA to the loans in issue in ruling on the motions to compel. In *Cox v. Cmty. Loans of Am., Inc.*, 2012 WL 773496, at \*1 (M.D. Ga. Mar. 8, 2012), the plaintiffs alleged multiple violations of the MLA, including the inclusion of forced arbitration clauses in the loan terms. The Georgia court determined the applicability of the MLA, as opposed to referring that issue to an arbitrator, and it held that the complaint described vehicle title loans that were covered under the MLA and, therefore, that the forced arbitration clauses were ineffective. *Id.*, at \*6. The court later certified a class, and the Eleventh Circuit affirmed the certification. 625 Fed. Appx. 453 (11th Cir. 2015).

In *Juarez v. Drivetime Car Sales Company, LLC*, the court expressly considered whether it or an arbitrator should decide the applicability of the MLA to the challenged loan, and it decided that this task fell upon it. 2021 WL 2118282, at *8-9 (M.D. Fla. Feb. 2, 2021) (magistrate's report and recommendation), *objection to R&R overruled*, 2021 WL 2404118 (M.D. Fla. June 1, 2021). It wrote, "the undersigned must determine whether the Installment Contract is covered by the MLA in order to decide the threshold issue of whether the Arbitration Agreement is enforceable—an issue that the Court must decide." *Id.*, at *9.

This Court should follow the decisions above and determine whether the MLA applies to Defendants' timeshare loan to the Steines Family, because it must do so to determine whether the arbitration agreement and delegation clause were void from their inception. Notably, this holds true even if the FAA applies to Defendants' timeshare loan to the Steines Family, as all the above decisions assumed the FAA's application. However, the MLA expressly preempts the FAA, removing any potential obligation of the Court to enforce the purported arbitration agreement and delegation clause in the face of the MLA's prohibition against them.

**II.     The MLA Expressly Preempts the FAA, So It Cannot Require Arbitration of Plaintiffs' Claims Under the MLA**

The FAA requires courts to "enforce agreements to arbitrate according to their terms[,].... even when the claims at issue are federal statutory claims, *unless* the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood,* 132 S. Ct. 665, 669 (2012) (*quoting Shearson/Am. Exp., Inc. v. McMahon,* 482 U.S. 220, 226 (1987)) (emphasis added). The MLA does exactly that. It provides: "**Arbitration.** — Notwithstanding section 2, of title 9 [the FAA] … no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member or dependent of such a member …." 10 U.S.C. § 987(f)(4).

The Supreme Court has expressly recognized that the MLA overrides the FAA. In *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018), the Court explained that there are occasions where Congress overrides the FAA and that it does so by clearly expressing that intent. One of the specific examples the Court provided was the MLA:

> *Congress has likewise shown that it knows how to override the Arbitration Act when it wishes*—by explaining, for example, that, "[n]otwithstanding any other provision of law, ... arbitration may be used ... only if" certain conditions are met, 15 U.S.C. § 1226(a)(2); or that "[n]o predispute arbitration agreement shall be valid or enforceable" in other circumstances, 7 U.S.C. § 26(n)(2); 12 U.S.C. § 5567(d)(2); *or that requiring a party to arbitrate is "unlawful" in other circumstances yet, 10 U.S.C. § 987(e)(3).*

13

*Id.* (emphasis added).

Notably, the Supreme Court recognized Congress's intent to override the FAA based solely on the language of 10 U.S.C. § 987(e)(3) declaring arbitration provisions unlawful in loans to service members or their dependents. When the language of 10 U.S.C. § 987(f)(4) declaring arbitration agreements unenforceable *notwithstanding § 2 of the FAA* is also considered, the Congressional intent for the MLA to override the FAA's application could not be clearer.

Because Congress has clearly expressed an intention to preclude arbitration of the Steines Family's MLA claims, the MLA precludes application of the FAA. In the absence of § 2 of the FAA making arbitration clauses enforceable the same as all other contracts, a law (such as the MLA) specifically prohibiting arbitration clauses in a certain context must be honored. The cases cited above in which courts enforced state statutes prohibiting arbitration clauses because the McCarren-Ferguson Act preempted the FAA perfectly demonstrate this principle.

### III. WHEN THE COURT EXAMINES THE ISSUE, IT WILL DETERMINE THAT THE MLA APPLIES TO DEFENDANTS' TIMESHARE LOAN TO THE STEINES FAMILY

For the reasons stated in Plaintiffs' Response, and Memorandum in Support, to Defendants' Opposed Motion to Dismiss and Incorporated

Memorandum of Law, filed contemporaneously herewith and incorporated herein by reference, the Court should find that the MLA applies to Defendants' timeshare loan to the Steines Family, voiding from their inception the purported arbitration agreement and delegation clause at issue.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny the Motion to Compel Arbitration and award them all such other and further relief to which they may be justly entitled.

DATED: May 12, 2022.　　　　/s/*Scott R. Jeeves*_____
**JEEVES LAW GROUP, P.A.**
Scott R. Jeeves, FBN: 0905630
Kyle W. Woodford, FBN: 1033490
2132 Central Avenue
St. Petersburg, Florida 33712
Telephone: (727) 894-2929
sjeeves@jeeveslawgroup.com
kwoodford@jeeveslawgroup.com
khill@jeeveslawgroup.com

**JEEVES MANDEL LAW GROUP, P.C.**
Roger L. Mandel
(admitted *pro hac vice*)
2833 Crockett St
Suite 135
Fort Worth, TX 76107
Telephone: 214-253-8300
rmandel@jeevesmandellawgroup.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell, FBN: 0071072
Brian W. Warwick, FBN: 0605573
Matthew T. Peterson, FBN: 1020720

        Erika Willis, FBN: 100021
        1101 E. Cumberland Ave., Ste. 201H, #105
        Tampa, FL 33602
        Telephone: (352) 753-8600
        Facsimile: (352-504-3301
        jvarnell@varnellandwarwick.com
        bwarwick@varnellandwarwick.com
        mpeterson@varnellandwarwick.com
        ewillis@varnellandwarwick.com
        kstroly@varnellandwarwick.com

        **CRAIG E. ROTHBURD, P.A.**
        Craig E. Rothburd, FBN: 0049182
        Dylan J. Thatcher, FBN: 1031532
        320 W. Kennedy Blvd., #700
        Tampa, Florida 33606
        Telephone: (813) 251-8800
        Fax: (813) 251-5042
        craig@rothburdpa.com
        dylan@rothburdpa.com
        maria@rothburdpa.com

        *Counsel for Plaintiffs, individually and on behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF Portal, which will send notice of filing and a service copy to all counsel of record.

        /s/*Scott R. Jeeves*
        Scott R. Jeeves