## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ADAM U. STEINES, individually, and on behalf of all others similarly situated, and MIRANDA L. STEINES, individually, and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>           v.<br><br>WESTGATE PALACE, L.L.C., a Florida limited liability company, WESTGATE RESORTS, INC., a Florida corporation, and WESTGATE RESORTS, LTD., L.P., a Florida limited partnership, CENTRAL FLORIDA INVESTMENTS, INC., WESTGATE VACATION VILLAS, LLC, CFI RESORTS MANAGEMENT, INC.,<br><br>                Defendants. | Case No.: 6:22-CV-00629-RBD-GJK |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSED MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, Adam U. Steines and Miranda L. Steines (the "Steines Family"), file this response to Defendants' Opposed Motion to Dismiss and Incorporated Memorandum of Law (Doc. 28) ("Motion") and show the Court as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

In their Class Action Complaint (Doc. 1) ("Complaint"), the Steines Family pleads that they were duped into purchasing a timeshare from Defendants using consumer credit (the "Steines Loan") that is subject to protections provided by the Military Lending Act, 10 U.S.C. § 987 ("MLA"), as defined by 32 C.F.R. § 232.2 ("the DOD Regulation"). They further plead that in making the Steines Loan, Defendants violated the MLA in multiple respects, thereby rendering the Steines Loan void from its inception and entitling them to return of all amounts paid to Defendants.

In the Motion, Defendants do not deny that the Steines Loan constituted an extension of consumer credit as defined by the DOD Regulation or claim that the Steines Family failed to sufficiently allege their violations of the MLA. Rather, pursuant to Fed. R. Civ. P. 12(b)(6), Defendants seek dismissal solely on the basis that the Steines Loan allegedly falls within the residential mortgage exception to the DOD Regulation's definition of consumer credit – thereby removing it from the MLA's coverage.

1

This exception is for "[a] residential mortgage, which is any credit transaction secured by an *interest* in a *dwelling* …." 32 C.F.R. 232.3(f)(2)(i) (emphasis added). "Dwelling means a residential structure that contains one to four units …" including "an *individual* condominium unit, cooperative unit, mobile home, and manufactured home." 32 C.F.R. § 232.3(k) (emphasis added). As explained later, "interest" means a real property interest, such that a residential mortgage is a credit transaction secured by a real property interest in a residential structure that contains one to four units.

Recognizing this, Defendants claim their loan was secured by a fee interest (a real property interest) in an individual unit, Unit 1-1912. Motion at PageID 161 & 170.[1] However, the Warranty Deed and Lien on Real Property ("Deed"), attached hereto as Exhibit A, and the Timesharing Plan for Westgate Palace incorporated into it (Doc. 28-1) only convey "ownership in fee simple of an undivided interest in *a building in the Resort Facility* as tenant in common with other Owners which shall constitute said Owner's Timeshare Interest." Timesharing Plan, Doc. 28-1 at 252. The "building in the Resort Facility" has 203 units (Doc. 28-1 at 218, 249 & 251), so it certainly does not qualify as a "dwelling"- "a residential structure that contains one to four units."

---

[1] All page references herein will be to the PageID numbers.

Further, as to Unit 1-1912, while the Deed conveys a right to occupy it pursuant to the Timesharing Plan, the Timesharing Plan provides that "owners of Floating Unit Weeks shall not be entitled to possession and use of the specific Unit or the specific Unit Week assigned, but instead *such possession and use rights are released* in consideration for receiving the right to request a reservation annually (or biannually, for owners of Biennial Floating Unit Weeks) for a Floating Unit Week within the Floating Use Plan system …." Doc 28-1 at 214. The right to make a reservation in an unspecified unit at an unspecified time does not convey any "interest" in Unit 1-1912 or any other individual unit. Further, any "interest" given in the unspecified units is not a real property interest at all, but rather only the right to obtain permission (not a real property interest) to use an unspecified unit.

The straightforward application of the definitions of "residential mortgage" and "dwelling" in the DOD Regulation, 32 C.F.R. § 232.3(f)(2) & (k), to the conveyance language of the Deed and the Timesharing Plan dictates the conclusion that the Steines Loan does not constitute a "residential mortgage" excepted from the MLA. Perhaps realizing this, Defendants make a longshot argument, based on legislative history and the treatment of timeshare interests under the Truth in Lending Act ("TILA") and Regulation Z, that Congress intended to exclude from the MLA all loans secured by anything

labeled a "timeshare interest," and, more specifically, that Congress intended them to fall within the residential mortgage exception. Motion at 170-181.

This argument fails for two reasons. First, where statutory language is clear and unambiguous, no need exists to examine legislative history and other statutes to determine its meaning and application. Second, the legislative history of the MLA and its relationship to TILA and Regulation Z in no way evidences a Congressional or DOD intent to exclude from the MLA loans secured by "timeshare interests" of the type Defendants conveyed to the Steines Family.

## ARGUMENT AND AUTHORITIES

### I.   UNDER THE PLAIN LANGUAGE OF THE MLA AND THE DOD REGULATION, THE LOAN DOES NOT CONSTITUTE A RESIDENTIAL MORTGAGE

 A. A Residential Mortgage Is a Credit Transaction Secured by a Real Property Interest in a Residential Structure that Contains One to Four Units.

The MLA grants numerous protections to members of the armed forces and their dependents in connection with the extension of consumer credit to them, including: (1) limiting the type of interest that they can be charged, (2) capping the annual percentage rate, (3) making mandatory a number of loan disclosures in addition to those required by TILA and Regulation Z, and (4) putting limitations on the provisions that can be included in the transactions, including prohibiting mandatory arbitration clauses. 10 U.S.C. § 987(a), (b), (c)

& (e). The MLA also requires the Secretary of Defense to prescribe regulations to carry it out, including defining "consumer credit," which must exclude "a residential mortgage." 10 U.S.C. § 987(h)(1) & (2)(D) & (i)(6).

The Secretary of Defense carried out this responsibility in the DOD Regulation which defines "consumer credit" as "credit offered or extended to a covered borrower primarily for personal, family or household purposes, and that is: (i) Subject to a finance charge; or (ii) Payable by a written agreement in more than four installments." 32 C.F.R. § 232.3(f)(1). Defendants do not deny that the Steines Loan falls within this definition of "consumer credit."

The DOD Regulation also defines the residential mortgage exception as follows:

> (2)   Exceptions. Notwithstanding paragraph (f)(1) of this section, consumer credit does not mean:
>
> (i)    A residential mortgage, which is any credit transaction secured by an *interest* in a *dwelling,* including a transaction to finance the purchase or initial construction of the dwelling, any refinance transaction, home equity loan or line of credit, or reverse mortgage;
>        …
>
> (k)    Dwelling means a residential structure that contains one to four units, whether or not the structure is attached to real property. The term includes an *individual* condominium unit, cooperative unit, mobile home, and manufactured home.

32 C.F.R. § 232.3(f)(2) & (k) (emphasis added).

5

"Interest" necessarily means a real property interest. Apropos to this case, consider someone renting a unit for a few days in a timeshare property who does not own a timeshare interest in the property, just like renting a room in a hotel.[2] That person has an "interest" in the unit in the broadest sense of the term, but not only does that person not have an ownership interest in the unit, he or she has a mere license to use it, which is not a real property interest at all. *See* Fla. Stat. § 509.141 (allowing summary ejection of a hotel guest without the need for formal eviction proceedings as would be required of a tenant under a lease); *In re Sombrero Reef Club, Inc.*, 18 B.R. 612, 619 (Bankr. S.D. Fla. 1982) (holding timeshare interest that consisted only of option to make a reservation on stated terms did not constitute a lease); *Keane v. The President Condo. Ass', Inc.*, 133 So. 3d 1154, 1156 (Fla. 3rd DCA 2014) ("unlike a lease or an easement, a license is not an **interest in real property**; ....") (emphasis in original). Certainly, that short term rental agreement could not be used to secure a loan.

Accordingly, a residential mortgage must mean a credit transaction secured by a real property interest in a residential structure that contains one to four units.

---

[2] The Westgate Palace in which the Steines Family purchased a timeshare interest rents the Units to the general public, calling itself a resort. https://www.westgateresorts.com/hotels/florida/orlando/westgate-palace-resort/.

B.   The Timeshare Interest Securing the Loan Is Not a Real Property Interest in a Residential Structure that Contains One to Four Units

On August 31, 2019, the Steines Family signed the Contract for Purchase and Sale ("Contract") to purchase a ½ All Season-Float Week/Float Unit timeshare interest in the Westgate Palace pursuant to the terms of the Timesharing Plan. Complaint ¶ 63 (Doc. 1 at 19); Contract (Doc. 1-1 at 43). Section 1 of the Contract, entitled "**Description of Timesharing Plan**," provides that "[p]ursuant to the Timesharing Plan, the Developer shall convey to each Purchaser the ownership in fee simple of an undivided interest as a tenant in common with the other Owners in *a particular building in the Resort Facility* …." Contract, Doc 1-1at 43 (emphasis in bold in original, emphasis in italics added). It bears repeating that the Contract gave the Steines Family no right to receive a real property interest in Unit 1-1912, but rather only an interest in a "building" at Westgate Palace.

The Deed granted "the following described property ('the 'Property')" to the Steines Family:

> **1/2 Time Share Interest(s) All Season – Float Week / Float Unit according to the Time Sharing Plan for Westgate Palace, a Timesharing Resort, recorded in Offical Records Book 710, at Page 1467 of the Public Records of Orange County, Florida (the "Plan"). Together with the right to occupy, pursusant to the Plan, Buildings/ Unit(s)/ Unit Week(s)/ Assigned Year(s), 1/1912/22/ODD.**

Deed, Exhibit A hereto, at 1 (emphasis in original).

Notably, the phrase "**1/2 Time Share Interest(s) All Season – Float Week / Float Unit**" has no discernable meaning without referring to the Timesharing Plan. Further, the Deed only conveys "the right to occupy, pursuant to the Plan" Unit 1-1912, Unit 1912 in Building 1. As previously explained, the mere right to occupy the Unit does not convey a real property interest in it. The short short-term rental of the Unit, a mere license and not a real prorperty interest, would grant that same right to occupy.

The Timesharing Plan[3] in "<u>Article I</u>, <u>Definitions,</u>" Paragraph AE, defines a "Timeshare Interest," what the Deed conveyed to the Steines Family, as "the Ownership in fee simple of an undivided interest as a tenant in common with the other Owners *in a particular building in the Resort Facility* … The Timeshare Interest conveyed shall be limited to an undivided interest *only in the building* in which the Assigned Unit and Assigned Unit Week is located." Timesharing Plan, Doc. 28-1 at 250 (emphasis added). Simply put, the Timeshare Interest securing Defendants' loan to the Steines Family consists of an undivided real property interest only in Building 1, the building in which Unit 1912 is located, and not in Unit 1912 itself.

---

[3] The title of the document recorded at Book 7010, Page 1467 referred to as the Timesharing Plan in the Deed is titled "Declaration of Covenants, Conditions and Restrictions for Westgate Palace, a Timeshare Resort. Doc. 28-1 at 247. Article I, Definitions, Paragraph Y of the Timesharing Plan provides that "'Plan' or 'Timeshare Plan' means this Declaration of Covenants, Conditions and Restrictions, as amended from time to time." *Id.* at 249.

In "Article II, "DESCRIPTION OF IMPROVEMENTS AND TIMESHARING PLAN," Section C, "Timesharing Plan and Floating Use Plan," Paragraph 1, "Timesharing Plan," the Timesharing Plan doubles down on this description of the real property interest conveyed by the Deed: "Developer shall convey to each Owners by Warranty Deed the ownership in fee simple of an undivided interest *in a building in the Resort Facility* as a tenant in common with other Owners which interest shall constitute said Owner's Timeshare Interest." *Id.* at 252.

Although perhaps obvious, the building in which the Steines Family received an interest contains more than four units. The "'Resort Facility' means the land and buildings containing Units now or hereafter constructed upon the property described on Exhibit A attached to the [Timesharing Plan], as amended from time to time …." Timesharing Plan, Article I, Paragraph AA, Doc. 28-1 at 249. Article II, Section A described the Resort Facility in 2004 as consisting of "two hundred four (204) Units, together with certain common areas." *Id.* at 251. Exhibit A shows that those 204 Units are contained in one "18 Story Stucco Frame Building."[4] *Id.* at 285.

_____

[4] In 2006, the number of Units was reduced to 203. *Id.* at 218. In 2008, Building 2 containing 204 Units was added to the Resort Facility, bringing the total Units to 407. *Id.* at 199.

So, Defendants' loan to the Steines Family is secured by an undivided fee interest in a building containing over 200 units. Such a building does not constitute a "dwelling" under the MLA exclusion, which is "a residential structure that contains one to four units." Thus, Defendants' loan does not, as a matter of law, constitute a "residential mortgage" excluded from the coverage of the MLA, requiring denial of the Motion.

Defendants may protest that this is not the end of the story because the Deed also conveys a right to occupy Unit 1-1912, which would constitute a "dwelling." This argument fails for two reasons. First, the Deed only confers a right to occupy Unit 1-1912 "pursuant to the Plan" (Deed, Exhibit A hereto, at 1), and the Plan takes away the right to occupy Unit 1-1912 or any other specific Unit. Second, the mere right to occupy does not amount to a real property interest that could be the subject of a residential mortgage.

In "Article II, "DESCRIPTION OF IMPROVEMENTS AND TIMESHARING PLAN," Section C, "Timesharing Plan and Floating Use Plan," Paragraph 2, "Floating Use Plan and Floating Use Plan and Regulations," Subparagraph A, "Floating Use Plan," the Timesharing Plan provides:

> The owner of a Floating Unit Week shall be assigned to a specific Assigned Unit Week in a specific Assigned Unit. However, owners of Floating Unit Weeks *shall not be entitled to possession and use of the Specific Unit or the specific Unit Week assigned, but instead, such possession and use rights are released in consideration for*

> *receiving the right to request a reservation* annually (or biennially, for owners of Biennial Floating Unit Weeks) for a Floating Unit Week within the Floating Use Plan system ….

Doc. 28-1 at 214 (emphasis added).

Thus, the Steines Loan is not secured by a right to occupy Unit 1-912 or any specific Unit, but rather only the right to make a reservation for some Unit. And, that right is to make a reservation on a first come, first served, space-available, basis. Timesharing Plan, Exhibit C, "Floating Use Plan Rules and Regulations for Westgate Place," Paragraph 5(A)&(B), Doc. 28-1 at 222-223 & 193. The Steines Family effectively only has the same right to reserve a Unit in the Westgate Palace as a person who does not own a timeshare interest at all. They certainly have no "interest" of any type in Unit 1-1912 or any specific Unit.

Further, putting aside the undivided fee interest in the entire building, the mere right to make a reservation to use some unidentified unit does not by itself even constitute a real property interest. In holding a similar interest did not constitute a real property interest, a bankruptcy court held that "the right to use the property on certain agreed terms … does not amount to a sale of [real] property" and that such an agreement did not even amount to a lease, stating "a qualified right to obtain accommodations of a certain quality within certain time periods … "is more akin to an option to make reservations at a hotel on stated terms." *In re Sombrero Reef Club, Inc.*, 18 B.R. at 618 & 619.

*Bartine v. Diamond Resorts Mgmt., Inc.* 2019 WL 12536565 (M.D. Fla. June 13, 2019), cited by Defendants (Motion at 168), does not help them. There, the plaintiffs received an undivided interest in the condominium parcel plus the right "to use and occupy an Assigned Unit (though not necessarily the specific Unit identified in his Warranty Deed) …." *Id.*, at *5. The court held that the plaintiffs' timeshare interest constituted a real property interest under the Florida Timeshare Act. *Id.*, at *5-6. Crucially, the fact that a particular timeshare is a real property interest under the Florida Timeshare Act, which is designed to regulate timeshares, does not necessarily mean it is a real property interest in a "dwelling" as the MLA defines that term.

Indeed, the Steines Family did not receive the right "to use and occupy an Assigned Unit" along with the undivided fee in interest in the building, but rather only the right to try to reserve one on a first come, first serve, space-available basis. That does not amount to the "right to occupy a timeshare unit" required for the conveyance of a timeshare estate, a parcel of real property, under Florida law. *See* Fla. Stat. § 721.05(34). And, even if it did, Defendants face the original problem that they conveyed a fee interest to the Steines Family not in a "dwelling" — "a residential structure that contains one to four units," but rather in a building containing 203 Units. Thus, the Steines Loan does not constitute a residential mortgage excluded from the coverage of the MLA.

## II. DEFENDANTS' VERSION OF THE LEGISLATIVE HISTORY OF THE MLA CANNOT HELP IT ESCAPE THE STRAIGHTFORWARD APPLICATION OF THE PLAIN LANGUAGE OF THE MLA TO THE WARRANTY DEED AND THE TIMESHARING PLAN

A. Because the Application of the Plain Language of the MLA and the DOD Regulation to the Deed and Timesharing Plan Dictates That the Steines Loan Is Not a Residential Mortgage, the Court May Not Consider Legislative History or Other Extrinsic Items

The United States Supreme Court has directed the Federal courts as follows:

> The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what is says there.'" Thus, our inquiry begins with the statutory text and ends there as well if the text is unambiguous.

*BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) (internal citations omitted). In that case, the Supreme Court held that because the plain meaning of "valuable minerals" did not include sand and gravel, "we have no occasion to resort to legislative history." *Id.* at 186.

Here, the Steines Loan was secured by a fee interest in a 203-unit building. No legislative history or discussion of related statutes can change the fact that such a building is not a "residential structure containing one to four units" – which is the stated definition of a "dwelling" necessary to trigger the exception. Thus, as a matter of law, the Steines Loan is not a residential mortgage, and the Court may not look beyond the text of the DOD Regulation

13

to find a different answer. Out of an abundance of caution, however, the Steines Family will address Defendants' argument regarding Congressional and DOD intent.

B.   Neither Congress nor the DOD Intended to Exclude from the Coverage of the MLA Loans Secured by the Type of "Timeshare Interest" Defendants Sold to the Steines Family

The mere fact that when members of Congress briefly discussed pay day loans, but not timeshare loans, as one of the types of predatory lending directed at service members that the MLA was intended to curb does not mean they intended to exclude all loans secured by anything labeled a "timeshare interest" from the coverage of the MLA. *See* 152 Cong. Rec. S6405-01, S6405; 152 Cong. Rec. H7976-02. By that logic, if Congress passed a law prohibiting assault with a deadly weapon on federal property and Congress members discussing it only mentioned gun violence, assault with a tire iron would not be prohibited by the law.  It is just as likely that Congress did not mention timeshare interests because they thought that it was obvious that timeshares are not the types of dwellings excepted from the MLA.

As Defendants argue, after initially defining "consumer credit" in the MLA narrowly to apply only to specified transactions, the DOD amended the definition to largely follow the expansive definition given to it in TILA by Regulation Z. Motion at 173 (citing Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 80 FR 43560-01). However, the

fact that TILA treats loans secured by some timeshare interests as excluded residential mortgages does not mean that the timeshare interest Defendants conveyed to the Steines Family also so qualifies under either the MLA or TILA.

Initially, the DOD Regulation makes clear that courts should only look to Regulation Z when it does not already define the words in issue. 32 C.F.R. § 232.3(s) ("Words *that are not defined in this part* have the same meanings given to them in Regulation Z ….") (emphasis added). The DOD Regulation defines "residential mortgage" and "dwelling," as explained above, so it would be improper to look to TILA and Regulation Z for their meanings.

In any case, the definitions of those terms in Regulation Z are so close to their definitions in the MLA that the outcome would be the same. Regulation Z defines "residential mortgage transaction" to mean "a transaction in which a mortgage … is created or retained in the consumer's principal *dwelling* …." 12 C.F.R. § 1026.2(24) (emphasis added). It defines "dwelling" to mean "a residential structure that contains one to four units …." 12 C.F.R. § 1026.2(19). Certainly, a reservation for a week vacation in an unspecified unit is not the "principal dwelling" of the borrower. To that end, the TILA definition supports Plaintiffs' interpretation. And again, 203-unit Building 1 at the Westgate Palace is not a dwelling.

Finally, underlying Defendants' Congressional intent argument is their assertion that lending in the context of the sale of timeshare interests does not

constitute predatory lending. Nothing could be further from the truth. Before issuing the initial version of the DOD Regulation, the DOD explained that its study of predatory lending had identified several common characteristics, including lending without regard of the borrowers' ability to pay, excessive fees and excessive interest rates, balloon payments with unrealistic payment terms, and fraud and deception. Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 72 FR 18157-01 at 18159.

The sale of timeshare interests and related lending has historically been rife with just such abuses:

> However, with greater access to timeshares … consumers have been forced to contend with deceptive business practices and misleading investment expectations. …. Specifically, regulations on the timeshare industry have developed with a spotlight on sales and marketing, mortgage liability, hidden costs, deceptive practices, and the secondary market.
>
> ….
>
> [T]he timeshare industry's exorbitant marketing fees force developers to charge purchasers a significantly higher price for the timeshares than their actual worth. As a result, many banks are reluctant to lend money to timeshare purchasers because the asset cannot be held as collateral.
>
> ….
>
> Therefore, many purchasers are forced to turn to *creative financing*. Creative financing devices include loans from the seller, balloon payment loans, wraparound mortgages, mortgage assumption and sale-lease back, among others. These alternative forms of loans are far more expensive than traditional loans, which

have interest rates averaging 14.1 percent on a standard timeshare loan.

….

After signing an agreement to purchase a timeshare interest, many buyers find themselves overwhelmed with hidden costs associated with ownership. Many costs are additional fees that are not originally mentioned in the purchase price ….

E. Cameron & S. Maxwell, *Protecting Consumers: The Contractual and Real Estate Issues Involving Timeshares, Quartershares, and Fractional Onwerships*, 37 Real Est. L. J. 278, 278-29, 288 & 290 (Spring, 2009) (emphasis in original).

Defendants have been among the culprits in such predatory conduct. In 2015, the Tennessee Court of Appeals upheld a judgment against Defendants for $600,000 in punitive damages in connection with a single transaction involving a floating timeshare interest, finding that clear and convincing evidence supported that Defendants were guilty of fraud and misrepresentation, as well as intentional violations of the Tennessee Time-Share Act and the Tennessee Consumer Protection Act. *Overton v. Westgate Resorts, Ltd.*, 2015 WL 399218, at *1, 2 & 7 (Tenn. Ct. App. 2015), appeal denied (June 15, 2015), cert denied, 136 S. Ct. 486 (2015).

In short, neither Congress nor the DOD intended to exclude from the coverage of the MLA loans made in connection with the sales of the type of timeshares sold by Defendants to the Steines Family, which does not qualify

17

as residential mortgages.  Further, the timeshare industry in general and Defendants specifically engage in exactly the sort of predatory lending that Congress and the DOD intended the MLA to curb.

Congress wanted United States Service Members to be able to purchase homes which would provide further stabilization to soldiers and their families. This was the intent of the exclusion. To argue that Congress wanted to protect soldiers' ability to buy timeshares that they cannot afford at outrageous interest rates is pure fabrication and is contrary to the purpose of the MLA. Common sense dictates that the residential mortgage exclusion does not apply.

**WHEREFORE**, Plaintiffs Adam and Miranda Steines, respectfully request the Court to deny the motion and to grant them all such other relief to which they may justly be entitled.

DATED: May 12, 2022.  /s/*Scott R. Jeeves*
**JEEVES LAW GROUP, P.A.**
Scott R. Jeeves, FBN: 0905630
Kyle W. Woodford, FBN: 1033490
2132 Central Avenue
St. Petersburg, Florida 33712
Telephone: (727) 894-2929
sjeeves@jeeveslawgroup.com
kwoodford@jeeveslawgroup.com
khill@jeeveslawgroup.com

**JEEVES MANDEL LAW GROUP, P.C.**
Roger L. Mandel
(admitted *pro hac vice*)
2833 Crockett St

Suite 135
Fort Worth, TX 76107
Telephone: 214-253-8300
rmandel@jeevesmandellawgroup.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell, FBN: 0071072
Brian W. Warwick, FBN: 0605573
Matthew T. Peterson, FBN: 1020720
Erika Willis, FBN: 100021
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352-504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
mpeterson@varnellandwarwick.com
ewillis@varnellandwarwick.com
kstroly@varnellandwarwick.com

**CRAIG E. ROTHBURD, P.A.**
Craig E. Rothburd, FBN: 0049182
Dylan J. Thatcher, FBN: 1031532
320 W. Kennedy Blvd., #700
Tampa, Florida 33606
Telephone: (813) 251-8800
Fax: (813) 251-5042
craig@rothburdpa.com
dylan@rothburdpa.com
maria@rothburdpa.com

***Counsel for Plaintiffs, individually and on
behalf of all others similarly situated***

19

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 12, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF Portal, which will send notice of filing and a service copy to all counsel of record.

/s/*Scott R. Jeeves*
Scott R. Jeeves