IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ADAM U. STEINES, etc., et al.,

    Plaintiffs,

vs.

Case No.: 6:22-CV-00629-RBD-GJK

WESTGATE PALACE, LLC, etc., et al.,

    Defendants.

_____/

## DEFENDANTS' REPLY IN SUPPORT OF WESTGATE'S OPPOSED MOTION TO DISMISS

Defendants, WESTGATE PALACE, LLC, et al. (collectively "Westgate" or "Defendants"), have moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' Complaint (ECF 1) (the "Complaint").

## INTRODUCTION

Plaintiffs purchased and financed a timeshare interest from Westgate. Despite Westgate's undisputed compliance with an array of federal and state disclosure laws – including the Truth in Lending Act, Regulation Z and RESPA – Plaintiffs filed this class action against Westgate for allegedly violating the Military Lending Act (the "MLA"). Westgate moved to dismiss (the "Motion"), asserting that the financing transaction is exempt from the MLA under its residential mortgage exemption. Plaintiffs Response ("Response") made only two arguments – that the MLA's residential mortgage exception does not apply because (1) Plaintiffs' timeshare is not a real property interest, and (2) Plaintiffs'

timeshare is housed in a structure containing 203 units. However, the Court should reject Plaintiffs' arguments for two reasons. First, a sister Court of this District has already determined that that Plaintiffs' exact timeshare interest—a fee interest in a tenancy in common subject to a floating use plan—is a real property interest. Second, the plain language of the MLA's residential mortgage exception shows it applies to *individual units* within structures containing more than four units.

**LEGAL ARGUMENT**

**I.   Plaintiffs' Timeshare Interest is a Dwelling under the MLA.**

The MLA exempts any "residential mortgage," defined as "any credit transaction secured by an interest in a dwelling." See 32 C.F.R. § 232.3(f)(2)(i). A dwelling is any "residential structure that contains one to four units" and expressly includes, but is not limited to, "an individual condominium unit, cooperative unit, mobile home, and manufactured home." See 32 C.F.R. § 232.3(k). Plaintiffs acknowledge the term "interest" means only a "real property interest". (ECF 38 at 3) ("As explained later, 'interest' means a real property interest…").

In the Response, Plaintiffs do not dispute and accordingly concede that their timeshare is both mortgaged and residential, and that a fee interest is a real property interest. (ECF 38 at 2, 13).[1] Westgate now addresses the only issues

---

1.   *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); *Singh v. Royal Caribbean Cruises Ltd.*, No. 20-24987-CIV, 2021 WL 6884873, at

presented in the Response – (1) whether Plaintiffs' timeshare interest is a real property interest despite being subject to a floating use plan, and (2) whether Plaintiffs' individual timeshare unit is a dwelling despite being housed in a structure containing 203 units.[2] (ECF 38 at 2-4, 6-7, 11-12).

### A. Plaintiffs' Timeshare is a real property interest.

Plaintiffs' assertion that their timeshare interest amounts to a license simply ignores Florida law. A timeshare, whether floating or fixed, is a real property interest because the Florida legislature, in the Florida Timesharing Act, has made it so. *See* Fla. Stat. § 721.05(34). The express purpose of the Florida Timesharing Act is to "[g]ive statutory recognition to *real property timeshare plans...* in this state." Fla. Stat. § 721.02 (emphasis added). Refuting Plaintiffs' proffered law review article portraying timeshare as predatory – hardly a compelling legal authority – the Florida Legislature recognized timeshare as a "dynamic" and "important" part of the state's economy:

> "The purposes of this chapter are to:
>
> (6) Recognize that the tourism industry in this state is a vital part of the state's economy; that the sale, promotion, and use of timeshare plans is an emerging, dynamic segment of the tourism industry; that this segment of the tourism industry continues to grow, both in volume of sales and in complexity and variety of product structure...."

Fla. Stat. § 721.02(6).

---

*16 (S.D. Fla. 2021) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned.").

2.   The Court should reject a sur-reply that makes arguments not asserted in their initial Response, as any new argument would be an impermissible "second bite" at their initial response to Westgate's Motion. *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1383 (S.D. Ga. 2015) ("The sur-reply brief may not be used to take another bite at answering an opposing party's motion....").

The Florida Legislature intended the Florida Timesharing Act to be interpreted broadly, covering all forms of timesharing plans including specifically the same types of property interests – *i.e.* condominiums and cooperative – defined as dwellings under the MLA.

> (34) "Timeshare estate" means a right to occupy a timeshare unit, coupled with a freehold estate or an estate for years with a future interest in a timeshare property or a specified portion thereof, or coupled with an ownership interest in a condominium unit pursuant to s. 718.103, an ownership interest in a cooperative unit pursuant to s. 719.103, or a direct or indirect beneficial interest in a trust that complies in all respects with s. 721.08(2)(c) 4. or s. 721.53(1)(e), provided that the trust does not contain any personal property timeshare interests. **A timeshare estate is a parcel of real property under the laws of this state**.

Fla. Stat. § 721.05(36) (emphasis added). When a right to occupy is coupled with a "freehold estate" or "ownership interest" – as it is with the Westgate timeshare Plaintiffs purchased and financed – the Timesharing Act makes the timeshare real estate. Plaintiffs' characterization of this statutorily defined real estate interest as a license simply flies in the face of this controlling Florida statute. Judge Byron rejected a similar mischaracterization of timeshare as personal property in *Bartine v. Diamond Resorts Mgmt., Inc.*, No. 6:18-cv-1364-ORL-40TBS, 2019 WL 12536565, at *5 (M.D. Fla. June 13, 2019).

Courts have routinely found that floating use and points-based timeshare plans are real property interests under the Florida Timesharing Act. *See Bartine*, 2019 WL 12536565, at *5; *Lennen v. Marriott Ownership Resorts, Inc.*, No. 19-13215, 2021 WL 5834264, at *10 (11th Cir. 2021). *Bartine* settles this issue outright. *See* 2019 WL 12536565, at *5. There, this Court found that a floating use

4

timeshare plan is a timeshare estate under the Florida Timesharing Act and, consequently, is real property. *See id*. Specifically, plaintiffs owned a fee simple undivided timeshare interest as tenants in common, subject to a floating use plan – the same exact timeshare interest as the Steines. *See id*. at *5. When plaintiffs stopped paying on their timeshare, Diamond Resorts foreclosed on their property. *See id*. Later, plaintiffs filed a class action against Diamond, alleging violations of the Fair Debt Collections Act *See id*. As part of their claim, plaintiffs alleged their timeshare was "personal property" and not a real property interest because it was subject to a floating use plan and, in doing so, made the *same exact arguments as the Steines,* which was ultimately rejected. *See id*.

This Court found the *Bartine* plaintiffs' floating use timeshare interest was real property:

> "Put simply, Plaintiffs received one fee simple undivided timeshare interest as tenants in common with other owners, together with the exclusive right to occupy their assigned timeshare unit in accordance with the Declaration. Therefore, by statute, Plaintiffs received a timeshare estate and real property. *See* Fla. Stat. § 721.05(34)."

*See id*.

In so holding, this Court in *Bartine* expressly rejected the Steines' argument that a floating use timeshare interest is not real property, even when a timesharing plan waives the right to a specific unit under a timeshare deed. *See id*. Instead, the Court found that the terms of a floating use plan do not alter a timeshare ownership interest and only outline the procedures of occupancy:

> "Plaintiffs claim that the Deed 'is invalid and incapable of transferring any real property interest' to them simply because they owned a 'Floating'

5

> timeshare interest that was is subject to a 'Floating' vacation ownership plan. Plaintiffs do not cite to any legal authority for support…
>
> However, this Section [of the floating use timesharing plan voiding the right to a specific unit] does not invalidate or alter Plaintiffs' timeshare ownership. It merely outlines the procedures regarding Plaintiffs 'use and occupancy' of their assigned timeshare unit."

*See id.*

In *Lennen*, Judge Mendoza of this Court also recognized that a points-based timeshare plan is a real property interest. *See Lennen et al. v. Marriott Ownership Resorts Inc. et al.*, Case No. 6:16-cv-00855-CEM-EJK (M.D. Fla.) (DE 258). There, plaintiffs owned a "points-based timeshare product in a multisite timeshare plan [under which] purchasers [were] conveyed [an interest in a Land Trust] which consist[ed] of forty-four Marriott-owned Legacy timeshare condominiums." *See id.* Although plaintiffs were never conveyed a specific timeshare unit, this Court found that the timeshare ownership interest was an ownership interest in real property:

> "The MVC Trust Instruments consist of MVC Consumer Deeds, mortgages, NOAs, and the Trust Memorandum. Each of these documents pertain to interests in timeshares estates comprising the MVC Plan. Those timeshare estates are interests in real property under Florida law. Therefore, the MVC Trust Instruments are 'instruments relating to the ownership, transfer, or encumbrance of . . . or any interest in' real property, and Orange County was required under section 28.222 to record them."

*See id.*

### B. Plaintiffs' Timeshare is not a License.

Because this Court has already held that floating use timeshare interests are real property, Plaintiffs' argument that their timeshare interest is a license fails as a matter of law. Nevertheless, several important factual distinctions show

6

Plaintiffs' timeshare is real property. For example, unlike the granting of a license, Plaintiffs' Purchase Agreement conveyed a defined and particularly described fee interest in a parcel of real property, set a price, specified transaction closing costs, and disclosed the pro rata share of ad valorem taxes the Plaintiffs will owe. Westgate then conveyed the timeshare by a general warranty deed, subject to a publicly recorded declaration, and provided a policy of title insurance (ECF 1-1, ECF 28-1). Plaintiffs also executed a promissory note and real estate mortgage, subject to default and foreclosure in the event of non-payment. (ECF 1-2, ECF 28-1). These documents portray a real estate transaction not the granting of a far more ephemeral license.

The only two cases cited by Plaintiffs—(1) *Keane v. President Condo. Ass'n, Inc.*, and (2) *In re Sombrero Reef Club, Inc.*—are, quite clearly, inapposite. *See* 133 So. 3d 1154, 1155 (Fla. Dist. Ct. App. 2014); 18 B.R. 612, 619 (Bankr. S.D. Fla. 1982). In *Keane* the court did not discuss a timeshare interest at all but rather a parking permit. *See* 133 So. 3d at 1155. In *In re Sombrero*—a 1982 opinion suffering from substantial negative treatment—the court construed a vague timeshare contract that explicitly provided that that the timeshare owner had "no interest in the property." *See* 18 B.R. at 619. Unlike *Sombrero*, Plaintiffs' timeshare contract explicitly provided them with an ownership interest in the 203 unit building, to be discussed below, and the real estate upon which it is situated. (ECF 1-1). Because Plaintiffs' caselaw fails to present even a wisp of the same factual or legal issues before the Court now, they should be rejected.

### C. Plaintiffs' Timeshare is a Dwelling Despite Being Housed in a Structure Containing more than four Units.

Plaintiffs' argument that the MLA's residential mortgage exception applies only to structures containing four units or less defies common sense and nonsensicalizes the remaining language in that provision. While the MLA's definition of dwelling starts with a "residential structure that contains one to four units," it goes on to include individual parcels of real property like condominium and cooperative units which are virtually always contained within a building of many more than four units. *See* 32 C.F.R. § 232.3(k). Plaintiffs do not suggest that only units in the tiniest of condominium and cooperative projects – four units or fewer – are eligible for this exemption. So the supposed four-unit cap on what is or can be a dwelling must mean something entirely different from what Plaintiffs contend. Congress gives us no insight here. By specifying four units or less, the MLA likely seeks to include within the exemption the purchase and financing by a single owner of a duplex, triplex, or quadplex. Presumably four units is the tipping point between residential and investment property. This commonsense interpretation makes a single owner building of five units or more an investment property rather than a residential property under the MLA, which would not be subject to the MLA in any event.

The timeshare is no less a dwelling because of the timeshare plan. Plaintiffs' assertion that the Steines purchased an interest in the entire building mischaracterizes the timeshare regime. Plaintiffs became owners in common

8

with others who share an interest in the unit identified as Building 1, Unit 1912. The deed makes this clear.

The floating use plan then provides the mechanism to arrange for the residential occupancy of the timeshare interest. This does not change the real estate interest acquired or Plaintiffs' ownership of it. This is just like *Bartine* in which the Court opined that the declaration does not modify ownership rights but rather simply provides the procedure for occupancy. 2019 WL 12536565, at *5. Under the Declaration, the "Floating Use Plan" is an arrangement whereby the Steines released their occupancy rights in a specific unit, here, Unit 1-1912, in consideration for receiving the right to request a reservation for any other *floating unit week* within the building:

> S. "Floating Unit Week" means a Unit Week that is committed to the Floating Use Plan.
>
> T. "Floating Use Plan" means the arrangement pursuant to which the right to use, possess, and occupy a specific Floating Unit Week in a specific Unit is released in consideration for receiving the right to request a reservation for any Floating Unit Week in accordance with the terms of the Declaration and the Floating Use Plan Rules and Regulations, as the same may be amended from time to time.

(ECF 28-1 at 68).

By the plain terms of the Purchase Agreement and the Declaration, and reinforced by the Florida Legislature, Plaintiffs' purchased a real estate timeshare interest. The timeshare is a dwelling because, like the other MLA examples, people eat and sleep there.[3] The floating use plan does nothing to change that.

---

[3] Plaintiffs do not argue, and nothing in the MLA suggests, that living in a unit otherwise eligible for the exemption for less than 52 weeks a year negates the exemption. To be clear, no minimum residency period in a dwelling is specified nor should one be concocted.

## II. Conclusion.

In light of the contract, deed and Declaration – all of which Plaintiffs invoke – the timeshare is a dwelling and Plaintiffs' mortgage is a residential mortgage and so exempt for the MLA. Westgate's motion to dismiss should be granted.

Dated:  May 31, 2022 　　　　　　　Respectfully submitted,

                                            By:  /s/ Richard Epstein
RICHARD W. EPSTEIN, ESQ.
Bar No. 229091
JEFFREY A. BACKMAN, ESQ.
Bar No. 662501
SHANE MCGLASHEN, ESQ.
Bar No. 1018642
GREENSPOON MARDER LLP
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
richard.epstein@gmlaw.com
jeffrey.backman@gmlaw.com
shane.mcglashen@gmlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 31, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF Portal, which will send notice of filing and a service copy to all counsel of record.

                                            */s/ Jeffrey A. Backman*
JEFFREY A. BACKMAN