# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

ADAM U. STEINES, individually, and
on behalf of all others similarly situated,
and MIRANDA L. STEINES,
individually, and on behalf of all others
similarly situated, ANDREW M.
ORMESHER, individually and on behalf
of all other similarly situated,

      Plaintiffs,

vs.

WESTGATE PALACE, LLC, a Florida
limited liability company, WESTGATE
RESORTS, INC., a Florida corporation,
WESTGATE RESORTS, LTD., a Florida
limited partnership, CENTRAL
FLORIDA INVESTMENTS, INC., a
Florida corporation, WESTGATE
VACATION VILLAS, LLC, a Florida
limited liability company, CFI RESORTS
MANAGEMENT, INC., a Florida
Corporation, and WESTGATE LAKES,
LLC, a Florida limited liability company,

      Defendants.

_____/

Case No.: 6:22-cv-00629-RBD-DAB

## DEFENDANTS' OPPOSED MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendants WESTGATE PALACE, LLC, WESTGATE RESORTS, INC.,

WESTGATE RESORTS, LTD., CENTRAL FLORIDA INVESTMENTS, INC.,

WESTGATE VACATION VILLAS, LLC, CFI RESORTS MANAGEMENT,

INC., WESTGATE LAKES, LLC, (collectively "Westgate" or "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6)[1], move to dismiss Plaintiffs' First Amended Complaint (ECF 60) (the "FAC").

## LEGAL MEMORANDUM IN SUPPORT

### INTRODUCTION

This case centers on whether the Military Lending Act applies to a purchase money timeshare mortgage. Plaintiffs Adam and Miranda Steines purchased from and financed with Westgate a real estate timeshare interest in the Westgate Palace resort. Plaintiff Adam Ormesher, along with an individual named Brooke Winterfell ("Winterfell"), likewise financed a timeshare interest in the Westgate Lakes resort. Westgate's timeshare resorts are designed to provide accommodations and resort amenities for the personal use of its owners. A non-residential or commercial use is prohibited. Now, despite recognizing that they entered into binding contracts, Plaintiffs assert their mortgages are void because Westgate allegedly violated the MLA. However, the MLA does not apply to Plaintiffs' mortgage for two distinct reasons.

First, the MLA does not apply because Plaintiffs' transactions are residential mortgages. The MLA exempts residential mortgages. The MLA defines a residential mortgage as any credit transaction secured by an interest in a dwelling. Florida law

---

[1] Westgate has contemporaneously filed a motion to enforce the arbitration agreement Plaintiffs signed as part of the same transaction they challenge in this case.  Because Westgate's Motion to Compel Arbitration is predicated upon Rule 12(b)(1), questioning whether this Court has subject matter jurisdiction, the Motion to Compel should be considered first.  If granted, and the case ordered to arbitration, this motion is rendered moot.

makes clear that a timeshare is an interest in real property. A tenancy in common in real property to be occupied for personal, not commercial, purposes, is an ownership interest in a dwelling. Here, Westgate provided a purchase money mortgage to both Plaintiffs secured by a tenancy in common in real property subject to a timesharing arrangement located in Orlando, Florida. The Declaration for Westgate Palace and Westgate Lakes limits the use of Plaintiffs' timeshare to residential purposes. Commercial – *i.e.,* occupancy not for personal use – is prohibited. Therefore, Plaintiffs' transaction is an exempt residential mortgage because it is a mortgaged interest in residential real property.

Second, Congress intended for timeshare to be exempt from the MLA. The MLA was originally sponsored by Senator John Talent whose exclusive concern was payday lending due to its predatory nature and exorbitant interest rates. When the MLA was first enacted in 2006, Congress tasked the Department of Defense with defining the MLA's scope. The DOD recognized that the MLA should apply to only pernicious lending practices and exclude benign or beneficial credit. To determine which credit practices negatively impacted Servicemembers, the DOD has published innumerable financial surveys over the course of 15-years, all of which were designed to pinpoint the precise types of lending that should be covered by the MLA. Timeshare was never identified as being predatory.

Finally, Plaintiffs have failed to join an indispensable party. Winterfell is an undisputed co-owner of Ormesher's timeshare interest. Because Winterfell has a vested interest in the real property purchased by Plaintiff Ormesher and is a party to

the agreement Plaintiff Ormesher seeks to void, she is an indispensable party without whom this case cannot proceed. Accordingly, the Court should dismiss the FAC because the MLA does not and was never meant to apply to Plaintiffs' timeshare and because Winterfell is an un-joined indispensable party.

## FACTS

The Westgate companies comprise a timeshare company that markets, sells and finances the sale of real estate timeshare interests. (ECF 1 at ¶ 51). Westgate sold and financed the purchase of a timeshare interest by Adam and Miranda Steines and Andrew Ormesher (the "Plaintiffs"). (ECF 1 at ¶ 63). To consummate their purchase, Plaintiffs executed a purchase and sale agreement (the "Purchase Agreement"), a promissory note, real estate mortgage, and a closing disclosure form, all of which were subject to their respective recorded Declaration of Covenants and Restrictions. (ECF 1 at ¶¶ 5, 7; ECF 60-1, 60-2, 60-5, 60-7, 60-8, 60-9, 60-11, 60-12). They also executed an arbitration addendum. (ECF 60-4)[2]. These binding and enforceable contracts were simple, legible, and conspicuously detailed Plaintiffs' new mortgage obligations, interest rates, and payment schedules. (ECF 1-1, 1-2, 1-4).

Under the Purchase Agreement, Plaintiffs purchased a real estate timeshare interest. The Steines purchased an undivided interest as a tenant in common in a unit at the Westgate Palace Resort located at 6145 Carrier Drive, Orlando, Florida. (ECF

---

[2] Plaintiffs stipulate in the FAC that the contents of the arbitration agreement are the same for all named Plaintiffs. (ECF 60 at ¶7). The FAC was filed before this Court's order setting the Westgate's first Motion to Compel Arbitration for hearing. (ECF 61). The FAC rendered Westgate's first Motion to Compel Arbitration, (ECF 27), and Motion to Dismiss, (ECF 28), moot.

1 at ¶ 76; ECF 60-1). Ormesher, along with his co-purchaser Winterfell, purchased an undivided interest as a tenant in common in a unit at Westgate Lakes III located at 10000 Turkey Lake Road, Orlando, Florida. (ECF 60 at ¶87; ECF 60-8). Westgate sold to each Plaintiff an "ownership in fee simple of an undivided interest as a tenant in common with the other Owners" in Unit 1-1912. (ECF 60 at ¶87; 60-1, 60-8). The Purchase Agreements incorporated a declaration of covenants, conditions, and restrictions (the "Declarations"), which were publicly recorded. (ECF 60-5, 60-11). Both Declarations describe the timeshare plan and Plaintiffs' property rights and make clear that only a personal – *i.e.* residential – use of the timeshare is permitted, and prohibits any commercial use of the timeshare. Under these documents, Plaintiffs are entitled to occupy their Orlando resort accommodations every other year. (ECF 1-1).

Plaintiffs financed their purchase, executing a promissory note, mortgage, and closing disclosure form. (ECF 60-2, 60-6, 60-7, 60-9, 60-12). The Steines financed $8,024.87, while Ormesher and Winterfell financed $44,711.19 – the amount specified in their promissory notes – with the timeshare interest serving as the collateral under the mortgage. (ECF 1-2). Before closing, Plaintiffs and Winterfell executed a disclosure form which detailed in large bold font the principal balance, loan amount, interest rate, closing costs, and loan calculations through maturity. (ECF 60-7, 60-12). Plaintiffs' interest rate was fixed (much lower than 36%), and the loan included no prepayment penalty or balloon payment. Plaintiffs now allege, without joining Winterfell, that the transaction violated the MLA. (ECF 1).

Westgate moves to dismiss.

## LEGAL STANDARD FOR A MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be considered." *See Jackson v. Natixis Real Est. Cap. Inc.*, No. 3:14-CV-953-J-32MCR, 2015 WL 12851915, at *2 (M.D. Fla. June 15, 2015), *report and recommendation adopted*, No. 3:14-CV-953-J-32MCR, 2015 WL 12856031 (M.D. Fla. July 16, 2015).

## LEGAL ARGUMENT

I.  **The Military Lending Act does not Apply to the Financing of Plaintiffs' Timeshare Purchase Because it is an Exempt Residential Mortgage.**

The MLA, enacted by Congress in 2006 and implemented by the Department of Defense, governs extensions of "consumer credit" to qualifying members of the armed forces and provides them with various protections. *See* 10 U.S.C § 987(h); 32 C.F.R. § 232.1. While the MLA protects active Servicemembers, it applies to only specific, demarcated transactions which were hand selected by Congress and the DOD. *See* 32 C.F.R. § 232.1(b), (f)(2). Accordingly, the MLA does not apply to every transaction and hosts many exceptions. *See* 32 C.F.R. § 232.1(f)(2).

6

The MLA applies to creditors who extend "consumer credit" to "covered borrowers." *See* 10 U.S.C.A. § 987(a). The DOD defines consumer credit as any credit offered to a covered borrower primarily for personal, family, or household purposes and is (1) subject to a finance charge, or (2) payable by a written agreement in more than four installments. *See* 32 C.F.R. § 232.3(f)(1)(iii). The DOD promulgated this definition so that the MLA covered credit that was historically covered by the TILA. *See* 80 FR 43560-01, 43560. However, the MLA excepts many financing transactions from its regulation, including a residential mortgage. *See* 10 U.S.C.A. § 987(i)(6)(A).

**A. Plaintiffs' Timeshare is an Exempt Residential Mortgage.**

The MLA does not apply to the financing of Plaintiffs' timeshare purchase because it is a residential mortgage transaction. The MLA exempts from consumer credit any "residential mortgage," defined as "any credit transaction secured by an interest in a dwelling":

> "(f)(1) Consumer credit means credit offered or extended to a covered borrower primarily for personal, family, or household purposes…
>
> (2) Exceptions. Notwithstanding paragraph (f)(1) of this section, consumer credit does not mean:
>
> (i) A residential mortgage, which is any credit transaction secured by an interest in a dwelling, including a transaction to finance the purchase or initial construction of the dwelling, any refinance transaction, home equity loan or line of credit, or reverse mortgage…."

*See* 32 C.F.R. § 232.3(f)(2)(i).

A dwelling is any "residential structure that contains one to four units,

whether or not the structure is attached to real property. *See* 32 C.F.R. § 232.3(k).

Under the statute, a dwelling expressly includes an individual condominium unit and

cooperative unit:

> (k) Dwelling means a residential structure that contains one to four units, whether or not the structure is attached to real property. The term includes an individual condominium unit, cooperative unit, mobile home, and manufactured home.

*See id*.

### i.    *Plaintiffs' Tenancy in Common is a Dwelling.*

Both Plaintiffs purchased a tenancy in common in real estate whose sole

permitted use is for "personal, family, or household purposes," that is, for residential

use. The timeshare interest is, in the context of the MLA, akin to a condominium or

a cooperative, as all are interests in real property intended for residential use (and all

of which, with very rare exceptions, are contained in buildings with more than four

(4) units). While the term "dwelling" expressly includes an individual condominium

and cooperative, these property interests are merely illustrative and include other

similar, unenumerated property interests as well.[3] *See Fed. Land Bank of St. Paul v.*

*Bismarck Lumber Co.*, 314 U.S. 95, 99 (1941) ("[T]he term 'including' is not one of all-

embracing definition, but connotes simply an illustrative application of the general

principle."); *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 126 (1934) ("The terms 'means'

and 'includes' are not… synonymous. The natural distinction would be that where

---

[3] This is self-evident considering the term fails to list examples of other indisputable dwellings such as single-family townhomes, bungalows, flats, terraced houses, detached houses, core and cluster accommodations, *et cetera*.

'means' is employed, the term and its definition are to be interchangeable equivalents, and that the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition."); *Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177, 189 (1941) ("To attribute such a function to the participial phrase introduced by 'including' is to shrivel a versatile principle to an illustrative application.").

A condominium and cooperative are merely forms of owning an interest in real property. Congress has regulated in this area, with the Condominium and Cooperative Abuse Relief Act which defines a condominium as an ownership interest in a unit of a multiple unit building with an undivided interest as tenant in common in its common areas. *See* 15 U.S.C.A. § 3603(4)-(6). Likewise, a cooperative is an interest whereby a corporation purchases multiple units in a building and then sells shares in exchange for the right to occupy a particular unit for a fixed duration of time. *See* 15 U.S.C.A. § 3603(9)-(13). Evidently, as applicable to the MLA analysis, both a condominium and cooperative provide ownership rights to a parcel of real property for a fixed duration of time.[4]

Plaintiffs' tenancies in common are much like a condominium and cooperative as Congress has defined them. Both of Plaintiffs' tenancies in common are simply an undivided interest in a parcel of real property. *See United States v. Craft*, 535 U.S. 274, 279–80 (2002). Tenants in common each retain the quintessential

---

[4] These commonly understood definitions make clear that the "structure that contains one to four units" phrase was not intended to constrain the size of the structure in which an exempted condominium or cooperative unit was located.

rights of ownership, including the right to unilaterally alienate their interest through sale or gift or place encumbrances upon these interests. *See id*. They also have the right to use the property, to exclude third parties from it, and pass their interest to their heirs upon death. *See id*. Consequently, Plaintiffs' tenancies in common are no less a dwelling under the MLA then are a condominium unit or cooperative share.

### ii.    Plaintiffs' Tenancies in Common Remain an Interest in Real Property Simply Subject to a Timesharing Plan.

Plaintiffs' tenancies in common remain an ownership interest in real property even though they involve a timesharing plan. *See Bartine v. Diamond Resorts Mgmt., Inc.*, No. 618CV1364ORL40TBS, 2019 WL 12536565, at *5 (M.D. Fla. June 13, 2019); *see also* Fla. Stat. § 721.05(34). Under the Florida Timesharing Act, timeshare is an ownership interest in real property subject to a timesharing agreement. *See id*; Fla. Stat. Ann. § 721.05(39). Federal courts have found that Plaintiffs' precise ownership interests—a tenancy in common subject to a timesharing agreement under a Declaration—are an ownership interest in real property. See *Bartine*, 2019 WL 12536565, at *5.

### iii.    Plaintiffs' Timeshare is Residential Property.

The Westgate Palace and Westgate Lakes Declarations strictly prohibit commercial activity by a timeshare owner. The difference between a residential mortgage and a commercial mortgage is simply whether the property is used for business purposes. *See Rau v. Calvert Invs., LLC*, No. 19-10822, 2019 WL 6339817, at *1 (E.D. Mich. Nov. 27, 2019). A mortgage is residential if the secured property is

used for personal, family, or household purposes. A mortgage is commercial if the property is used for business purposes. "[I]n determining whether a transaction [is] primarily consumer or commercial in nature, courts 'must examine the transaction as a whole and the purpose for which the credit [is] extended.'" *See id.* at *6.

Plaintiffs can only use their timeshare for residential purposes. The Declarations prohibit Plaintiffs from engaging in any commercial activity from the unit:

A. Occupancy and Use Restrictions:

1. The Units shall be for transient resort occupancy only. No trade, business, profession or other type of commercial activity may be conducted in any Unit except for any Units which are used by Developer for models, sales offices, construction offices, storage or related uses. Each Owner shall have the exclusive right to use and occupy his Assigned Unit during the Assigned Unit Week assigned to such Owner subject to the provisions of the Plan. Without limiting the generality of the foregoing, no Owner or any other person or entity (other than the Developer or its designees) may advertise in any way in the Resort Facility, the Common Amenities or in any right-of-way adjacent to the Resort Facility or the Common Amenities. Included within the term "advertising" shall be for sale signs, displays of any kind and picketing regarding the sale or resale of Units or any commercial activity. The provisions of this paragraph may be enforced by either the Developer or the Association by a suit for damages or injunctive relief and, in addition, the Developer shall be entitled to a penalty of One Thousand ($1,000.00) Dollars per day for violation of this paragraph, it being expressly agreed that the damages associated with a violation of this paragraph cannot be accurately determined.

\*\*\*

A. Occupancy and Use Restrictions:

1. No Owner may occupy his Unit or permit another to occupy it unless he has provided notice to the Association at least fourteen (14) days in advance of the commencement of the Unit Week of his intention to occupy the Unit or to allow occupancy of his Unit by another person.

2. The Units shall be for transient resort occupancy only. No trade, business, profession or other type of commercial activity may be conducted in any Unit except for any Units which are used by Developer for models, sales offices, construction offices, storage or related uses. Each Owner shall have the exclusive right to use and occupy his Assigned Unit during the Assigned Unit Week assigned to such Owner subject to the provisions of the Plan. Without limiting the generality of the foregoing, no Owner or any other person or entity (other than the Developer or its designees) may advertise in any way in the Resort Facility, any Member Resort Facility, the Common Amenities or in any right-of-way adjacent to the Resort Facility, any member Resort Facility or the Common Amenities. Included within the term "advertising" shall be for sale signs, displays of any kind and picketing regarding the sale or resale of Units or any commercial activity. The provisions of this paragraph may be enforced by either the Developer or the Association by

35

(ECF 60-5 at 30; 60-12 at 36).

Plaintiffs' timeshare *must* be residential or else the MLA would not apply in the first place. The MLA applies to only "consumer credit transactions" which is defined as credit offered "primarily for personal, family, or household purposes." *See* 32 C.F.R. § 232.3(f)(1)(iii). The characterization of real property is binary – it is either for business use – *i.e., **not*** "primarily for personal, family, or household purposes" – or it is for residential use – *i.e.,* "primarily for personal, family, or household purposes." *See Rau,* 2019 WL 6339817, at *1. If Plaintiffs argue or the Court decides Plaintiffs' timeshare is not residential, then the MLA cannot apply, because it would inherently be commercial property. Indeed, the TILA, which uses the same definition of consumer credit, expressly excludes any transaction for business purposes. 15 U.S.C.A. § 1603(1). Accordingly, Plaintiffs' transactions are either a residential mortgage, or the MLA does not apply because it is not a consumer credit transaction.

### iv.   *Plaintiffs' Timeshare is an Exempt Residential Mortgage.*

The MLA does not apply to mortgages on dwellings. *See* 10 U.S.C.A. § 987(i)(6)(A). While a dwelling expressly includes condominiums and cooperatives, it also includes Plaintiffs' tenancy in commons because they are a comparable ownership interests in real property. *See Fed. Land Bank of St. Paul*, 314 U.S. at 99. Here, Westgate sold each Plaintiff a tenancy in common in a unit at their respective timeshare resorts, which provided an ownership right to use the property, exclude third parties from it, and pass their interest to heirs upon death. *See Craft*, 535 U.S. at

279–80; (ECF 1-1). Plaintiffs' timeshares were exclusively for residential purposes pursuant to Declarations. (ECF 60-5, 60-11).   Consequently, Plaintiffs' tenancy in commons are dwellings under the MLA.

### B. Congress did not Intend for the MLA to Apply to Timeshare.

Senator John Talent originally sponsored the MLA in 2006 as an amendment to the John Warner National Defense Authorization Act for Fiscal Year 2007. *See* 152 Cong. Rec. S6405-01, S6405. The MLA is also known as the "Talent Amendment" or "the Nelson-Talent Amendment."

In sponsoring the MLA, Senator Talent was expressly concerned with predatory payday lending because of its astronomical interest rates and the ways in which payday lenders were targeting military bases:

> "Mr. TALENT:
>
> Mr. President… I do want to take a few minutes to talk about an amendment which I cosponsored with Senator Nelson of Florida that passed the Senate in the Defense bill and that addresses a problem which has been growing and which is affecting the readiness of our Armed Forces.
>
> The fact is, predatory payday lenders are targeting American troops and are trying to make a buck off of their service to our country. We rely on the military to protect us, and we have just taken a significant step to protect them from predatory lenders. The Nelson-Talent amendment limits the annual percentage rate that payday lenders can charge soldiers and their spouses to 36 percent or about 11/2 to 2 times what credit cards typically charge. I recognize that payday lending can be a risky business, but a triple-digit interest rate, which is commonly charged today, is simply too much.
>
> Some estimate that the average APR on a payday loan today is over 400 percent, and there have been reports of payday loans with more than 800 percent interest rates. This is a national problem. Predatory payday lenders set up shop near our military bases throughout the country and prey on our servicemen…."

152 Cong. Rec. S6405-01, S6406; *see also* 152 Cong. Rec. H7976-02 ("Mr. Speaker, [payday lenders] have become a major concern in areas surrounding military installations.").

When Congress first enacted the MLA in 2006, it included the residential mortgage exception. *See* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 72 FR 18157-01. However, the MLA tasked the DOD with defining "consumer credit" in unity with Congress's intent and its fixed exemptions. *See id*. To define consumer credit, the DOD reviewed various financial surveys, all of which concluded predatory lending included (1) abusive collections actions, (2) balloon payments with unrealistic payment terms, (3) equity stripping, and (4) excessive interest rates. *See id*. Payday loans, vehicle title loans, and refund anticipation loans were considered the most predatory lending practices. *See id*. Timeshare was not mentioned as being predatory.

The DOD decided that Congress intended the MLA to narrowly apply to specific, demarcated predatory transactions. By including the residential mortgage exception, among others, Congress clearly intended to target the MLA's focus "upon credit practices evaluated as negative *without impeding the availability of credit that is benign or beneficial to Service members and their families*." *See id*. (emphasis added). Accordingly, the DOD defined consumer credit as applying to only the most predatory practices identified by Congress: payday loans, vehicle title loans, and refund anticipation loans. *See id*.

Over the next six years, payday lenders began structuring their loans to avoid the MLA. *See* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 79 FR 58602-01. Payday lenders easily avoided the MLA because it was so narrowly drawn. Congress consequently tasked the DOD with analyzing whether the definition of consumer credit required revision.

The DOD again surveyed enlisted servicemembers, finding 46% were saddled with at least one of the following types of loans:  payday loans, vehicle title loans, bank deposit advance loans, pawn shop loans, cash advances on credit cards, overdraft loans, overdraft lines of credit, overdraft protection from other accounts, relief society loans, and loans from friends and family. *See id*. Again, timeshare did not make the list.

To eliminate the payday loopholes, the DOD amended the MLA's definition of consumer credit to "be defined consistently with credit that for decades has been subject to the [TILA], namely: [c]redit offered or extended to a covered borrower primarily for personal, family, or household purposes." *See* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 80 FR 43560-01. The DOD adopted the TILA's definition partially because the TILA's express purpose was to prohibit the same types of pernicious credit practices that the MLA deemed predatory. *See id*. However, as discussed *infra*, the TILA also characterizes purchase money financing of timeshare is an exempt residential mortgage transaction.

Since the MLA's enactment over 15-years ago, neither Congress nor the DOD has ever referred to timeshare as being a predatory lending practice that should be regulated by the MLA. On at least two separate occasions, the DOD reviewed rigorous survey evidence specifically designed to ferret out the most pernicious lending practices to Servicemembers. Timeshare was never mentioned. In 2015, the DOD went so far as declaring Servicemembers suffered from "debt from family and friends" without bothering to mention timeshare. *See* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 79 FR 58602-01. Yet, this is not surprising considering timeshare has no characteristic associated with predatory lending.

The legislative history proves that Congress and the DOD intended for timeshare to be exempt from the MLA as a residential mortgage. Senator Talent was originally concerned with payday loans exacting interest rates as high as 800%; Plaintiffs' timeshare mortgage interest rate is 17.99%, one-half the maximum MLA allows. (ECF 1-4); *see* 152 Cong. Rec. at S6406. There are no balloon payments or hidden compounding interest provisions. (ECF 1-4). To the contrary, Plaintiffs' timeshare transaction is precisely "the type of credit product[] that [is] amenable to [a] straightforward pricing mechanism[] relating to the cost of the funds borrowed (such as solely on the basis of a fixed or variable interest rate applied for a term or on a periodic basis)" that the DOD considered non-predatory. *See* 79 FR 58602-01. Accordingly, the Court should find that Westgate's timeshare mortgages are exempt as Congress intended.

### C. The Truth in Lending Act Confirms a Timeshare Mortgage is an Exempt Residential Mortgage.

In its "Final Rule," the DOD amended the MLA's definition of consumer credit to "be defined consistently with credit that for decades has been subject to the [TILA]." *See* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 80 FR 43560-01. The DOD adopted the TILA's definition of consumer credit because it guarded against the same types of lending the MLA deemed predatory – specifically, lending that had "little to no regard for the borrower's ability to repay the loan, unrealistic payment schedules, high fees and interest and the opportunity to rollover the loan instead of repaying it can create a cycle of debt for financially overburdened Service members and their families." *Id.* As originally enacted, the TILA shows timeshare was and continues to be residential property. However, through its evolution, the TILA shows timeshare is not meant to be regulated by the MLA, as the TILA has gradually exempted timeshare interests.

### i. The TILA Considers Timeshare to be Residential Property.

Timeshare is residential property under the TILA. In 1968, President Lyndon B. Johnson signed the original Truth in Lending Act into law. *See generally Goldblatt v. Herron*, No. 4:10-CV-01183-DGK, 2011 WL 3584794, at \*2 (W.D. Mo. Aug. 15, 2011). Congress enacted TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *See id.* The original Truth in Lending Act defined consumer credit in the same way it is defined today – credit

extended primarily for personal, family, or household purposes. *See United States Statutes At Large*, PL 90-321, May 29, 1968, 82 Stat. 146.

The TILA unambiguously affirmed timeshare is residential property. In 1980, Congress enacted the "Truth in Lending Simplification and Reform Act" (the "TILA"), which authorized the Federal Reserve Board to implement the TILA through what ultimately became Regulation Z. *See* PL 96–221 (HR 4986), PL 96–221, March 31, 1980, 94 Stat 132. In 2008, the Board amended Regulation Z to cover timeshare under the TILA because it was primarily used for personal, family, and household purposes. *See* Truth in Lending, 74 FR 23289-01 ("The Board proposed a new § 226.19(a)(5) containing the early disclosure requirements for mortgage loans secured by a consumer's interest in a "timeshare plan" (timeshare transactions)…."). The TILA has explicitly considered timeshare to be residential property for over a decade.[5]

### ii. Congress has Gradually Exempted Timeshare from the TILA's Disclosure Requirements Because it is not Predatory Lending.

Through its evolution, the TILA shows Congress intended for timeshare to be exempt from the MLA. The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 transferred rulemaking authority under TILA from the Federal Reserve Board to the Consumer Financial Protection Bureau (CFPB), effective July 1, 2011. *See Dodd–Frank Wall Street Reform And Consumer Protection Act*,

---

[5] This is bolstered by the fact that the TILA uses the same definition of consumer credit as the MLA and expressly excludes any transaction for business purposes. 15 U.S.C.A. § 1603(1).

Pl 111-203, July 21, 2010, 124 Stat 1376. Congress amended the TILA that same year to include "Subpart B" which imposed disclosure requirements for all mortgage transactions. *See* 15 U.S.C. § 1631 (2011). However, ever since the Dodd-Frank Act, Congress has expressly exempted timeshare from the TILA's mortgage disclosure requirements because timeshare does not entail predatory lending. *See* 15 U.S.C. § 1631-1651.

For example, 15 U.S.C.A. § 1639c governs the minimum standards for residential mortgage loans. In accord with the MLA's concerns, Section 1639c prohibits lenders from issuing residential mortgages without making a reasonable and good faith determination that the debtor can repay the loan. *See* 15 U.S.C.A. § 1639c(a)(1). Before issuing a residential mortgage, lenders must consider the debtor's credit history, current income, current debt obligations, debt-to-income ratio, and employment status. *See* 15 U.S.C.A. § 1639c(a)(3). However, at the very bottom, Section 1639c expressly exempts timeshare from its regulation and any regulations promulgated by Regulation Z. *See* 15 U.S.C.A. § 1639c(i).

Similarly, Section 1639b regulates residential mortgage loan origination. *See* 15 U.S.C. § 1639b. Its express purpose is to "assure that consumers are offered and receive residential mortgage loans on terms that reasonably reflect their ability to repay the loans and that are understandable and not unfair, deceptive or abusive." 15 U.S.C. § 1639b(a)(2). Section 1639b directs the Consumer Financial Protection Bureau to prohibit "predatory characteristics or effects (such as equity stripping excessive fees, or abusive terms)," which are the same exact practices the DOD

intended to prohibit under the MLA by aligning with the TILA. *See* 15 U.S.C. § 1639b(c)(3)(A)(ii); *See* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 79 FR 58602-01. Nevertheless, Section 1639b expressly excludes timeshare from its regulation and any regulation promulgated by Regulation Z. *See* 15 U.S.C.A. § 1639b(f).

Both Section 1638 and Section 1640(k) exclude timeshare from their regulation as well. Section 1638 imposes disclosure requirements in transactions other than open end credit plans. *See* 15 U.S.C.A. § 1638. It requires the disclosure of the amount financed, the principal, any additional charges, and the APR, among other items. *See id*. Nevertheless, timeshare is exempt under 15 U.S.C.A. § 1602(dd)(5). Likewise, timeshare is exempted by Section 1602(dd)(5) from Section 1640(k) which makes inadequate disclosures a defense against foreclosure. *See* 15 U.S.C.A. § 1640(k); § 1602(dd)(5). Undeniably, Congress has exempted timeshare from its mortgage disclosure requirements ever since its implementation of the Dodd-Frank Act. These key exemptions show Congress does not consider timeshare to be predatory lending and does not intend for it to be subject to heightened disclosure requirements under the TILA or the MLA.

> ### iii.   *The TILA Implies Timeshare is an Exempt Residential Mortgage Under the MLA.*

The TILA's definition of a "residential mortgage loan" implies that timeshare is a residential mortgage under the MLA. The TILA broadly defines a residential mortgage loan as any credit transaction that is secured by a mortgage or other

equivalent security interest in a dwelling. *See* 15 U.S.C. § 1602(dd)(5). Next, it excludes timeshare *only* for purposes of Subpart B's regulations:

> "The term 'residential mortgage loan' means any consumer credit transaction that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling, **other than** a consumer credit transaction under an open end credit plan **or, for purposes of** sections 1639b and 1639c of this title and section 1638(a)(16), (17), (18), and (19) of this title, and sections 1638(f) and 1640(k) of this title, and any regulations promulgated thereunder, an extension of credit relating to a plan described in section 101(53D) of Title 11 [timeshare]."

*See id.* (emphasis added).

Timeshare is excluded only from Subpart B because the statute inserts the prepositive modifier "for purposes of [Subpart B]" after the word "or," causing "other than" to modify and exclude timeshare under Title 11 of the Bankruptcy Code. *See Ray v. McCullough Payne & Haan*, L.L.C., 838 F.3d 1107, 1111 (11th Cir. 2016) (noting that a prepositive or postpositive modifier normally applies to the nearest reasonable reference). The sentence is correctly read "[t]he term 'resid

ential mortgage loan' means any consumer credit transaction that is secured by a mortgage… other than…, for purposes of [Subpart B], an extension of credit relation to [timeshare]." *See* 15 U.S.C. § 1602(dd)(5).

By excluding timeshare from the definition of a residential mortgage only under Subpart B, the TILA implies timeshare is principally a residential mortgage in every other context. *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1031 (2019). In *Obduskey*, the United States Supreme Court found that such "limited purpose definitions" imply just that. There, plaintiff alleged defendant violated the

Fair Debt Collection Practices Act when it attempted to enforce a security interest. *See id.* at 1035. The defendant moved to dismiss, arguing the enforcement of a security interest was not debt collection for FDCPA purposes. The lower court agreed and dismissed. The case was sent up to the Supreme Court.

The Court affirmed the dismissal. In reaching its conclusion, the Court was required to interpret the FDCPA's definition of debt collector. In what was coined the "limited-purpose definition" the FDCPA stated "…*for purposes of* section 1692f(6) [the] term [debt collector] also includes… [security enforcement]." *See id.* By using the phrase "for purposes of," the Court found that Congress intended the restriction that follows to apply only for its expressly stated limited purpose. Inversely, the restriction was not meant to and would not apply in any other context. Accordingly, the Court found that because plaintiff asserted an FDCPA subsection other than 1692f(6), the term debt collector did not include security enforcement.

Just as it was in Obduskey, the TILA implies timeshare is a residential mortgage under the MLA. The TILA excludes timeshare from the definition of a residential mortgage only for the limited purpose of Subpart B. *See* 15 U.S.C.A. § 1602(dd)(5). Following the Supreme Court's lead, the TILA's definition shows Congress intended for timeshare to be a residential mortgage in every other context, including the MLA.

## II.    Plaintiffs have Failed to join Winterfell, an Indispensable Party.

Rule 12(b)(7) provides that courts may dismiss suits where the plaintiff fails to join an indispensable party. *Barow v. OM Fin. Life Ins. Co.*, No. 8:11-CV-00159-T-33,

2011 WL 2649987, at *1 (M.D. Fla. July 6, 2011). To determine whether dismissal is appropriate, courts apply the criteria set forth in Fed. R. Civ. P. 19. *See Challenge Homes, Inc. v. Greater Naples Care Center, Inc.,* 669 F.2d 667, 669 (11th Cir.1982). The burden is on the party raising the defense to show that the person who was not joined is needed for a just adjudication. *See id.*

Rule 19 delineates a two-part inquiry for determining whether a party should be joined. First, the court must ascertain whether the person in question is "necessary" to the action under Rule 19(a). *Barow*, 2011 WL 2649987, at *1. A party is necessary if: (1) in that person's absence, the court cannot accord complete relief among existing parties; or (2) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because the interest. *See id.* If the court finds that the person is necessary but cannot be joined, then the court must determine whether the person is "indispensable" under Rule 19(b). *See id.*

"Courts have recognized that 'a contracting party is the paradigm of an indispensable party.'" *HDR Eng'g, Inc. v. R.C.T. Eng'g, Inc.*, No. 08-81040-CIV, 2010 WL 2402908, at *2 (S.D. Fla. June 15, 2010). Consequently, Courts have found that a contracting party is both necessary and indispensable as a matter of law. *See id.* ("'Parties to a contract are indispensable when a suit concerns the rights and obligations afforded by the contract."); *Mello v. Walled Lake Credit Bureau, LLC*, No.

13-14226-CIV, 2013 WL 12077491, at *5 (S.D. Fla. Oct. 17, 2013) (finding co-obligor on a mortgage was an indispensable party); *Harrell & Sumner Contracting Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1228–29 (5th Cir. 1977) ("The rule generally applied by federal courts is where two or more parties are joint obligees, they are indispensable parties in an action for enforcement of that obligation.").

Specifically, Courts have found that the indispensable nature of a party is heightened where plaintiff seeks to rescind or void the contract to which the un-joined party has rights or obligations:

> "Put simply, '[g]enerally ... courts will find parties to a contract to be necessary in an action to set aside the contract.' That is, in an action to find an agreement unenforceable, like this one, all parties to that agreement are necessary parties under Rule 19. The logic is clear. First, it is a well-established principle that to cancel an instrument, all parties to the instrument must be before the court…[t]he underlying theory of requiring every party to a contract to appear for that contract's destruction is the court's ability to accord complete relief. In other words, requiring all parties to a contract to appear in an action to rescind the contract ensures that the court may completely destroy the instrument."

*Stephen E. Witmer, v. Samuel Bruce Bates, et al.*, No. 3:22-CV-00317-LCB, 2022 WL 2134593, at *4 (N.D. Ala. 2022).

Winterfell is both necessary and indispensable because she is a contracting party to the purchase of the timeshare interest at issue in this case, which Plaintiffs – but not Winterfell - seek to void.  Plaintiffs stipulate to the transactional documents evincing Winterfell is a co-owner and contracting party to Ormesher's timeshare interest. (ECF 60-8; 60-8; 60-10). Plaintiffs repeatedly assert they seek to void Ormesher and Winterfell's timeshare contract but have joined only Ormesher in this

action. (ECF 60 at ¶¶17, 71, 100, 103). Winterfell cannot feasibly be joined, as there is no evidence she is an active duty servicemember, Ormesher's dependent, or has any other cause of action against Westgate. Consequently, the Court must dismiss the FAC for failure to join Winterfell, an indispensable party with a stipulated interest in the timeshare at issue in this case without whom full relief cannot be granted.

**III.    Conclusion**.

Westgate respectfully requests that this Court dismiss the FAC with prejudice.

**IV.    Local Rule 3.01(g) Certification.**

The Parties conferred on September 9, 2022, *via* telephone before the filing of this Motion. The Parties were unable to come to an agreement.

Dated:  September 9, 2022                    Respectfully submitted,

By:  /s/ Richard W. Epstein
RICHARD W. EPSTEIN, ESQ.
Bar No. 229091
JEFFREY A. BACKMAN, ESQ.
Bar No. 662501
SHANE MCGLASHEN, ESQ.
Bar No. 1018642
GREENSPOON MARDER LLP
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
richard.epstein@gmlaw.com
jeffrey.backman@gmlaw.com
shane.mcglashen@gmlaw.com
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 9, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF Portal, which will send notice of filing and a service copy to all counsel of record.

*/s/ Richard W. Epstein*
RICHARD W. EPSTEIN