# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ADAM U. STEINES, individually, and on behalf of all others similarly situated, and MIRANDA L. STEINES, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WESTGATE PALACE, L.L.C., a Florida limited liability company, WESTGATE RESORTS, INC., a Florida corporation, WESTGATE RESORTS, LTD., L.P., a Florida limited partnership, CENTRAL FLORIDA INVESTMENTS, INC., WESTGATE VACATION VILLAS, LLC, and CFI RESORTS MANAGEMENT, INC.,<br><br>Defendants. | Case No. 6:22-cv-629-RBD-DAB<br><br><br><br><br><br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, ADAM U. STEINES and MIRANDA L. STEINES ("the "Plaintiffs" or "Steines Family") , individually and on behalf of all others similarly situated, sue Defendants, WESTGATE PALACE, L.L.C. ("Westgate Palace"), WESTGATE RESORTS, INC. ("Westgate Resorts"), WESTGATE RESORTS, LTD., L.P. ("Westgate Resorts Ltd."),

CENTRAL FLORIDA INVESTMENTS, INC. ("CFI"), CFI RESORTS MANAGEMENT, INC. ("CFI Resorts Management"), and WESTGATE VACATION VILLAS, LLC ("Vacation Villas") (referred to herein collectively as "Westgate" or "Defendants[1]") and allege:

## INTRODUCTION

1.     This Complaint seeks to enforce the Military Lending Act ("MLA"), 10 U.S.C. § 987, which was enacted to protect members of the United States Military from an epidemic of predatory lending that endangers our Nation's military readiness and impacts servicemember retention.

2.     Westgate sells vacations, or more accurately, the potential to book a future vacation based on factors solely in Westgate's control.  The vacations are sold through a timeshare mechanism across the United States.   Westgate targets several groups of consumers, including members of the United States military. Westgate targets military consumers by, among other things, offering free stays to military families during Veterans Day Weekend and by offering discounts to military

---

[1] Plaintiffs allege claims against all Defendants as alter egos of one another, as explained more fully herein.

families year-round who want to stay near the theme parks in Orlando. These offers are publicized on websites widely used by the military community like militarydisneytips.com and militarybridge.com. Those military families are lured into high-pressure timeshare sales presentations and are frequently convinced to purchase timeshare interests at a Westgate location.

3.    A combination of factors make servicemembers uniquely attractive victims, including, among other reasons: 1) they are expected to pay their financial obligations in a proper and timely manner pursuant to the Uniform Code of Military Justice, 2) they have a reliable source of income that is subject to garnishment, 3) they are relatively unsophisticated consumers given their average age and educational background, and 4) for those servicemembers who have a security clearance, there is a serious penalty for nonpayment, because a failure to pay financial obligations often results in the loss of that security clearance and concomitant involuntary separation from the military.

4.    Westgate finances the sale of its vacations for consumers cloaked in the disguise of a timeshare interest at a particular resort. However, the purchase of Westgate's timeshare accommodation interest

is a sophisticated transaction that involves multiple entities that is more akin to an installment agreement allowing the purchaser to have the potential to rent vacation properties from Westgate sometime in the future, which often must be at least one year or more in the future from the booking date.

5.     In August 2019, Plaintiffs Adam U. Steines (active-duty status with United States Army at the time) and his spouse, Miranda L. Steines (a military dependent) obtained financing from Westgate Palace to purchase a "timeshare interest" at the Westgate Palace resort in Orlando, Florida. In connection with the purchase and its financing, the Steines Family and Westgate Palace executed the standard form Contract for Purchase and Sale, Note, Warranty Deed and Lien on Real Property, and Arbitration Addendum, which along with the Declaration of Covenants, Conditions and Restrictions for Westgate Palace, a Timeshare Resort ("Timeshare Plan" or "Plan"), as amended, and the Master Mortgage, as amended, both of which are incorporated into the Warranty Deed and Lien, collectively constitute the "Agreement". The Agreement was subject to MLA requirements because it was an extension of consumer credit that was not a residential mortgage and because it

was a hybrid loan that extended credit for other items in addition to the timeshare interest. *See* **Exhibit A** (Contract and Purchase for Sale); **Exhibit B** (Note); **Exhibit C** (Warranty Deed and Lien on Real Property); **Exhibit D** (Arbitration Addendum), **Exhibit E** (original version of the Timesharing Plan); **Exhibit F** (original version of Master Mortgage).

6.    The Agreement extended consumer credit because it was extended to a covered borrower primarily for personal, family, or household purposes and was subject to a finance charge and payable by a written agreement in more than four installments. In connection with the transaction, Westgate Palace and Westgate Resorts, Ltd. provided Closing Disclosures (**Exhibit G**) to the Steines Family.

7.    Plaintiffs' Agreement with Westgate is a standard form contract that does not materially differ in any way relevant to the claims in this action, and Westgate utilizes it for all its different timeshare locations, and all Class members' Agreements are materially the same. All Class members are subject to the terms of Timesharing Plans incorporated into their Warranty Deeds and Liens on Real Property. Pursuant to those Timesharing Plans, Plaintiffs and all Class members

had conveyed to them by Westgate timeshare interests consisting of the "Ownership in fee simple of an undivided interest as a tenant in common with the other Owners in the Resort Facility." In every case, the "Resort Facility" consists of one or more buildings containing far more than four units.

8.     That timeshare interest is not ownership of a "dwelling" as that term is defined in 32 C.F.R. § 232.3(k), and thus the Agreements between Plaintiffs and the Class and Westgate did not extend credit secured by an interest in a dwelling (i.e., did not create a residential mortgage as defined in 32 C.F.R. § 232.3(f)(2)(i)). Additionally, all of the loans were hybrid transactions involving the extension of credit for credit related items beyond the timeshare interest. Consequently, Westgate is a creditor as to Plaintiffs and the Class pursuant to 10 U.S.C. § 987(i)(5) and 32 C.F.R. § 232.3(i), and it extended consumer credit to them as defined in 10 U.S.C. § 987(i)(6) and 32 C.F.R. § 232.3(f)(1).

9.     Creditors like Westgate need only make a simple and free inquiry into a defense database or with credit reporting companies that will readily flag whether the applicant is an MLA "Covered Borrower." The MLA database was created to assist lenders with the identification

of the borrowers that Congress sought to protect, including Plaintiffs and the Class. Westgate, however, systematically fails to make a reasonable inquiry into a borrower's status under the MLA when extending consumer credit.

10.    Because of a 2015 amendment, the MLA covers an incredibly broad range of credit transactions that is closely aligned with the definition of credit in the Truth in Lending Act (TILA) and Regulation Z, with only very limited narrowly defined exceptions.  When consumer credit is extended to an MLA Covered Borrower, the MLA limits the amount of interest a creditor may charge, which is calculated based on the amount financed plus fees and charges for other credit-related ancillary products sold in connection with the transaction.

11.    The total charge must be expressed through an annualized rate expressed as the Military Annual Percentage Rate (MAPR), which includes charges that are not included in the annual percentage rate (APR) disclosed under TILA. The MAPR must then be provided to the consumer verbally before the transaction and then in writing on a separate document.  Additionally, the lender is still required to provide written disclosure of the APR along with all of the TILA disclosures.

12.     Importantly, the MLA also prohibits the use of mandatory arbitration clauses and waivers of other rights under state and federal laws.

13.     As a result of Westgate (a) failing to determine whether Plaintiffs and Class members were covered borrowers, (b) failing to calculate accurate interest rates pursuant to the MLA and charging MAPRs in excess of the interest rates set forth in the Agreements, (c) failing to disclose an MAPR orally, (d) failing to provide MLA disclosures in a separate writing, and (e) requiring Plaintiffs and Class members to agree to mandatory arbitration clauses, they violated the MLA.

14.     Credit agreements that violate the MLA are void from their inception pursuant to the statute.  This lawsuit seeks injunctive relief to void the credit agreements of Plaintiffs and the Class, as well as restitution damages to recover the money paid to Westgate by Plaintiffs and the Class, and other actual damages caused to Plaintiffs and the Class by Westgate's violations of the MLA.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to 10 U.S.C. § 987 and 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Defendants because Defendants are entities that were formed or incorporated in Florida, have been headquartered in Florida at all times relevant to this Complaint, and they engaged in much of the actions complained of herein in Florida.

17.     Venue is proper in this district pursuant to 10 U.S.C.A. § 987(f)(5)(E) and 28 U.S. § 1391, because one or more of Defendants resides in the district and a substantial part of the events and omissions giving rise to the claims occurred in the district.

18.     Plaintiffs have standing because they suffered a concrete injury in that: (a) they are obligated to pay money under the terms of a purported Agreement that was void from inception because Defendants violated the MLA, (b) they have made payments pursuant to the unlawful Agreement, which money they would not have paid but for Westgate knowingly or negligently inducing them into entering into an illegal and

void agreement, and (c) they paid interest in excess of the amount stated in the Agreement in violation of the MLA.

## **PARTIES**

19.    At all times material hereto, Plaintiff ADAM U. STEINES was sui juris, a citizen of North Carolina, and on active duty in the United States Army.

20.    At all material times hereto, Plaintiff MIRANDA L. STEINES was sui juris, a citizen of North Carolina and a military dependent.

21.    Defendant Westgate Palace, LLC, was and is a Florida limited liability company, headquartered in Orlando, Florida. At all times material hereto, Westgate Palace sold, sells, and finances timeshare interests in Florida.

22.    Defendant Westgate Resorts, Ltd., L.P., is an active limited partnership formed and operating in Florida under the name Westgate Resorts, Ltd., with its principal place of business in Orlando, Florida. Upon information and belief, at all times relevant to this lawsuit Westgate Resorts, Ltd., L.P. operated Westgate Palace, and all other Westgate timeshare locations in the United States.

23.     Defendant Westgate Resorts, Inc. is a Florida corporation with its principal place of business in Orlando, Florida. It is the general partner of Westgate Resorts, Ltd.

24.     Defendant Central Florida Investments, Inc. ("CFI") is a Florida corporation with its principal place of business in, Orlando, Florida. On its website, Westgate Resorts, Ltd. states that it operates as a subsidiary of CFI.

25.     Defendant CFI Resorts Management, Inc. ("CFI Resorts Management") is a Florida corporation with its principal place of business in Orlando, Florida. Upon information and belief, it is the managing entity that manages the Westgate Palace and all other Westgate timeshares in the United States.

26.     Defendant Westgate Vacation Villas, LLC ("Westgate Vacation Villas") is a Florida limited liability company with its principal place of business in Orlando, Florida. It is the general manager of Westgate Resorts, Ltd.

27.     CFI, CFI Resorts Management, Westgate Resorts, Inc., and Westgate Vacation Villas, LLC all have the same President/Secretary,

David A. Siegel, and the same Treasurer/Chief Financial Officer, Thomas F. Dugan.

28.     Upon information and belief, Westgate Palace is a single-purpose entity that exists only to own the Westgate Palace timeshare resort in Orlando and sell and finance timeshare interests within that resort.

29.     Upon information and belief, Westgate Resorts, Ltd. performs all the operations necessary for Westgate Palace to function, including handling the sale of timeshare interests in the Westgate Palace resort.

30.     The Warranty Deed provided to the Steines Family by Westgate Palace, LLC, was signed by Westgate Resorts, Inc., a Florida corporation, as its "Manager."

31.     Westgate Palace, LLC, is the entity listed on the Steines Family's Contract for Purchase and Sale, the Note, and the Closing Disclosures.

32.     Westgate Resorts, Ltd. is listed as the entity on the Steines Family's "Consent and Acknowledgement" form to record the execution process related to the sale.

33.    Steines Family's "Consent to Electronic Transactions" form refers generically to "Westgate Resorts" as the listed entity.

34.    Westgate Resorts, Ltd. is listed as the servicer for Westgate Palace, LLC, on the Steines Family's "Credit Card Authorization" form.

35.    The Steines Family's "Credit/Debit Card Authorization" refers generically to "Westgate Resorts" as the listed entity.

36.    The Steines Family's' "Incidental Benefit Acknowledgement and Disclosure Statement" form refers generically to "Westgate Palace" as the listed entity.

37.    The Steines Family's "Receipt for Today Money," provided when the Plaintiffs' made their initial purchase at "Westgate Historic Williamsburg" resort in Williamsburg Virginia, refers generically to "Westgate Resorts" as the listed entity.

38.    Westgate Palace, LLC, is the listed seller on the Steines Family's "Receipt for Timeshare Documents" form.

39.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants and was at all times operating and acting within the purpose and scope of said agency, service,

employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, and their collective conduct constitutes violations of the MLA as to Plaintiffs and Class members.

40.   At all times herein mentioned, Defendants and each of them, were fully informed of the actions of their agents and employees, and thereafter no officer, director or managing agent of Defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and all Defendants and each of them, thereby ratified those actions.

41.   There exists and, at all times herein mentioned, there existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and/or would promote injustice.

42.   For the reasons set forth in paragraphs 21-43, Defendants are jointly and severally liable for all the violations of the MLA alleged herein.

## FACTUAL ALLEGATIONS

### The Military Lending Act, 10 U.S.C. § 987

43.   The United States Congress passed the Military Lending Act of 2006 (hereinafter "MLA"), which was implemented as part of the John Warner National Defense Authorization Act for Fiscal Year 2007, Section 670, to protect military servicemembers from unfair or abusive loan or credit sale transactions, such as high interest, short-term, or installment loans to inexperienced military borrowers, who in years prior to enactment had fell victim to predatory lending.

44.   The MLA directs the Department of Defense ("DoD") to prescribe regulations to carry out the MLA. The DoD regulation, 32 C.F.R. Part 232, implementing the MLA contains limitations on and requirements for certain types of consumer credit extended to active duty servicemembers and their spouses, children, and certain other dependents ("covered borrowers"). Subject to certain exceptions, the regulation generally applies to persons who meet the definition of a

creditor in Regulation Z and are engaged in the business of extending such consumer credit, as well as their assignees.

45.     Under the MLA, "consumer credit" is defined as:

Credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is:

      (i)    Subject to a finance charge; or

      (ii)   Payable by a written agreement in more than four installments.

32 CFR § 232.3

46.     Westgate's financing of Plaintiffs' and the Class's timeshare interests via the Agreements was the extension of consumer credit, as defined under the MLA, 32 CFR § 232.3, because Plaintiffs and the other Class members were covered borrowers, their timeshare interests were primarily for personal, family, or household purposes, and Plaintiffs and the Class were subject to finance charges and the debt was payable pursuant to written agreements in more than four installments.

47.     The MLA requires certain disclosures when a lender extends "consumer credit" to "covered borrowers":

- A statement of the MAPR applicable to the extension of credit;

- Any disclosure Regulation Z requires to be made in accordance with the applicable Regulation Z provisions; and

- A clear description of the payment obligation, which can be either a payment schedule for closed-end credit, or account opening disclosures consistent with Regulation Z for open-end credit, as applicable.

48.     Specifically, the statement of the MAPR need not contain the MAPR for the transaction expressed as a numerical value or dollar amount of charges. Instead, it must describe the charges that may be imposed, consistent with the MLA and terms of the agreement, to calculate the MAPR. The MLA provides a model statement, and lenders may use the model statement or a substantially similar statement. No such disclosures were made to Plaintiffs and the Class in any form. Upon information and belief, it is Westgate's routine and systematic practice to not provide these required disclosures to covered borrowers.

49.     The MLA requires that the disclosures be written and provided in a form the covered borrowers can keep. In addition to the written disclosures, lenders must orally provide the information in the statement of MAPR and in the description of the payment obligation. These oral disclosures may be done in person or via a toll-free telephone

number provided to the borrower. No such required oral disclosures were ever made to Plaintiffs and the Class.

50.   The MLA places a duty on creditors to determine before the transaction whether a potential borrower is a "covered borrower," and provides an easy to implement safe harbor to protect a creditor from liability if they reasonably implement the procedure. Specifically, the MLA permits creditors to use either of two methods when ascertaining whether a consumer is a covered borrower for purposes of the MLA's protections: (1) The MLA Database maintained by the Department of Defense, or (2) consumer reports from a nationwide credit reporting agency. Westgate made no attempt to determine if Plaintiffs and the members of the Class were covered borrowers. It is Westgate's routine and systematic business practice to not determine whether an individual is a covered borrower.

51.   The MLA also prohibits creditors from requiring military borrowers to submit to mandatory arbitration and from attempting to waive a borrower's legal rights, such as the right to an award of punitive damages under state and federal law.   Yet, the standard form Agreements Westgate entered into with Plaintiffs and the Class

contained contractual provisions in violation of the MLA. *See, e.g.,* the Arbitration Addendum attached hereto as **Exhibit C**.

52.   Westgate systematically failed to comply with these MLA requirements in their contracts with and disclosures to covered borrowers, who all signed Agreements identical to or substantially similar to the Agreement between Plaintiffs and Westgate and received disclosures identical to or substantially similar to the disclosures provided to Plaintiffs by Westgate.

## Westgate

53.   Westgate is a lender and thus a creditor for timeshare interests throughout the United States.  Westgate's entire marketing scheme is centered on the selling of vacations.  Every page of its website is replete with references to vacations and not to the selling of real estate. The tab on the Westgate Resorts website titled "Explore Ownership" explains the true nature of what is sold in the timeshare transactions-- vacations, not an ownership interests in dwellings:

> Say goodbye to the standard old vacation and cramped hotel.
> Instead, say hello to vacation ownership and memorable
> family getaways that create memories of a lifetime!
> Vacation ownership in a timeshare like Westgate Resorts lets
> you choose the high road of vacations and enjoy everything
> from  large,  comfortable  and  luxurious  villas  to  an

extraordinary array of resort style activities and amenities. Our timeshare owners choose from dozens of beautiful resort properties across the United States in the most popular tourist destinations including:

- Orlando
- Las Vegas
- Gatlinburg
- Park City
- Branson
- Myrtle Beach
- Miami
- Williamsburg
- And more[2]

54.    Westgate has approximately 1,900 villas for which it has sold and loaned the money to purchase tens of thousands of timeshares, including, upon information and belief, making timeshare loans to hundreds or thousands of covered borrowers like Plaintiffs, and Westgate failed to provide them the protections required by the Military Lending Act.

55.    Upon information and belief, Westgate used the standard form Agreements for all the loans for timeshare interests at Westgate timeshare resorts with no relevant variations.

---

[2] https://www.westgateresorts.com/vacation-ownership/

56.    Despite the MLA's grant of a safe harbor from liability when creditors have a policy or procedure to ascertain whether a consumer is a military borrower subject to the MLA protections, Westgate failed to institute any such policy or procedure.

57.    Additionally, Westgate has uniformly and systematically failed to implement policies and procedures to ensure compliance with the MLA's mandatory written and oral disclosures and limitations as part of or in connection with their standard form Agreements that they use uniformly at their timeshare resort locations. There is no mention of MLA protections appearing anywhere in the Agreements and none were provided to Plaintiffs and the Class via any supplemental notices or disclosures.

58.    The Agreements fail to describe the charges Westgate imposes as required by the MLA.

59.    For Plaintiffs and the Class, Westgate also systematically failed to provide the mandatory oral disclosures, which includes the information in the statement of MAPR and in the description of the payment obligation. Westgate failed to do so in person, and they do not have a toll-free telephone number to call to receive them. Additionally,

there is no toll-free telephone number on the application or on the written disclosures.

60.     Westgate's standard form Agreements that Plaintiffs and Class members signed contains a mandatory arbitration agreement in violation of the MLA. **Exhibit C.**

61.     For Plaintiffs and the Class, all the Agreements were void from their inceptions because the MLA declares, "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987.

62.     This is not the first time Westgate has failed to provide mandatory disclosures to consumers.

63.     In 2015, the Tennessee Court of Appeals affirmed (with modification) a punitive damages award in a case filed by Tennessee timeshare owners against Westgate for defrauding them and hiding required disclosures from them. *See Overton v. Westgate Resorts, Ltd., L.P.*, No. E2014-00303-COAR3CV, 2015 WL 399218, at *7 (Tenn. Ct. App. Jan. 30, 2015) (stating "Westgate engaged in intentional and fraudulent conduct and that Westgate willfully violated both the

Tennessee Time-share Act and the Tennessee Consumer Protection Act."), appeal denied (June 15, 2015), cert. denied, 136 S. Ct. 486 (2015).

64.    Additionally, in 2016, The U.S. Consumer Financial Protection Bureau ("CFPB") investigated Westgate, according to the CFPB's recent decision regarding a civil investigative demand:

> to determine whether persons involved in the sale and financing of timeshares have engaged in, or are engaging in, acts or practices in violation of Sections 1031 and 1036 of the [Consumer Financial Protection Act], 12 U.S.C. §§ 5531 and 5536, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq., the Fair Credit Billing Act (FCBA), 15 U.S.C. § 1666 et seq., their implementing regulations, or any other Federal consumer financial law.[3]

### The Steines Family's Loan

65.    Plaintiff Adam U. Steines currently and at all relevant times serves in the United States Army. Miranda L. Steines is his spouse.

66.    On August 31, 2019, Plaintiffs signed a standard form Agreement with Westgate to obtain financing for a timeshare purportedly tied to Westgate Palace in Orlando, Florida. **Exhibits A-F**.

---

[3] Decision and Order, *In the Matter of Westgate Resorts, Ltd.*, 2015-MISCWESTGATE RESORTS, LTD-0001, (U.S. Consumer Financial Protection Bureau March 11, 2016) available at http://files.consumerfinance.gov/f/201603_cfpb_decision-and-order-on-petition-bywestgate-resorts-ltd-to-modify-or-set-aside-civil-investigative-demand.pdf.

67.   All of the documents that are referenced in the Agreement inform the nature of the transaction and no single document reveals the entirety of the rights, obligations, and restrictions attendant to the transaction.

68.   Westgate was a "creditor" which provided "credit" to Servicemember Plaintiff Adam U. Steines and his dependent Plaintiff Miranda L. Steines, as those terms are defined in 32 C.F.R. § 232.3(h) & (i).

69.   To obtain financing, the Steines Family provided their social security numbers and other credit information to Westgate.

70.   Westgate knew or should have known of his status as an active-duty military member, as the Plaintiff, Adam U. Steines, provided Westgate with his credit information and Westgate verified the same before entering into the Agreement.

71.   The Steines Family was coaxed into the Agreement with Westgate when a Westgate sales representatives contacted the Steines Family outside a local restaurant in Williamsburg, Virginia. This is a common tactic used by Westgate and its sales representatives, as they frequently approach vacationers on the street, in restaurants, and at

other public areas near popular vacation spots. They offer them free tickets to local attractions, discounts on timeshare purchases, gift cards or vouchers for free meals to entice them to take a tour of the Resort, then subsequently sit them through a sales presentation.

72. The Westgate Sales Representative lured the Steines Family into a high-pressure sales-pitch meeting with the promise of $175 Visa gift cards just for sitting through the presentation.

73. The Steines Family was then subjected to a five (5) hour high-pressure sales pitch presentation, designed to ensure they and the other attendees would not leave without purchasing a timeshare property. Westgate's tactics were successful, as the Steines Family finally did purchase a time share vacation.

74. In Westgate's standard form Agreement with the Steines Family, the total amount Westgate loaned to the Steines Family was stated to be $8,024.87 and no annual percentage rate was stated. On the Closing Disclosure and Note, the APR is stated to be 17.99%. **Exhibits B, G.** No Military Annual Percentage Rate (MAPR) was stated on any document provided to the Steines Family. When the charges borrowed by the Steines Family that are required to be included in calculating the

MAPR are added to the amount financed, the MAPR is 19.142%, higher than the 17.99% stated in the Note.

75.     When calculating the Steines Family's MAPR, Westgate's financing of the Exchange Membership Dues, Debt Waiver for Loss of Life, and Debt Waiver for Involuntary Unemployment, and Closing Charges must be included. It was not included in the APR stated in the Note and Closing Disclosure.

76.     The Agreement obligates the Steines Family to make monthly payments to Westgate in connection with their timeshare purchase in the amount of $150.52 for the next ten (10) years, until February 27, 2030. Exhibits B, D.

77.     In addition to the monthly 10-year loan payments, the Steines Family is obligated to pay additional fees, such as a maintenance assessment in the amount of $753.00 and ad valorem tax assessment in the amount of $89.00. Exhibits A, D.

78.     Even after the Steines Family's fulfillment of the loan obligation to Westgate, their payments will continue as they will to be obligated to make payments for additional fees, such as maintenance assessments and the ad valorem tax assessment.

## MLA Violations

79.    Westgate's standard form Agreements with Plaintiffs and the Class fail to properly disclose the accurate finance charges as defined by the MLA, fail to provide the standard written MLA disclosures, and because the original creditors do not provide oral disclosures, the Agreements fail to provide a method to obtain the oral disclosures as required by the MLA and the Code of Federal Regulations. Each of these failures are separate violations of the MLA, which renders Plaintiffs' and the Class's Agreements void from their inception. 10 U.S.C. § 987.

80.    Westgate's standard form Agreements also contain an Arbitration Addendum (**Exhibit C**) which requires Plaintiffs and Class members to submit to arbitration any dispute arising with Westgate and imposes arbitration related procedural requirements, which is unlawful under the MLA and is a separate violation of the MLA.

81.    Upon information and belief, Westgate has entered hundreds or thousands of contracts extending consumer credit to covered borrowers pursuant to Agreements identical or substantially similar to Plaintiffs' Agreement which also include unlawful mandatory arbitration provisions.

27

82.     Each Westgate standard form Agreement executed by a covered borrower, their spouse or a dependent of a covered borrower is void under the MLA because Westgate (a) failed to provide the written and oral disclosures required by the MLA, and/or (b) the Agreement contains a mandatory arbitration clause, and/or (c) charged interest at a rate higher than stated in the Agreement. 10 U.S.C. § 987.

83.     These violations caused Plaintiffs and the Class actual damages because they have made substantial payments under the illegal and void Agreements, which payments they would not have made but for being knowingly or negligently induced into entering into illegal and void Agreements by Westgate, because they are ostensibly obligated to pay more money in the future on the illegal and void Agreements, and because they have paid interest at rates higher than the rates stated in the Agreements.

## CLASS ALLEGATIONS

84.     Plaintiffs bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed "Class" includes the following:

All covered borrowers who purchased and financed timeshares from Westgate within five (5) years before the filing of this Complaint.

85.   Expressly excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

86.   Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

## Rule 23(a) Criteria

87.   <u>Numerosity</u>. Because Westgate targets military consumers as set forth above, and because Westgate has likely entered into tens of thousands of Agreements in connection with its approximately 14,000 timeshare units nationally over the last five years, Plaintiffs believe that the Class likely numbers in the thousands. Thus, the members of the Class are so numerous that joinder of all of them is impracticable. The exact number of Class members is unknown, as such information is in

the exclusive control of Westgate. The number of Class members can be easily determined by obtaining a list of persons who purchased and financed timeshare interests from Westgate and running the names and social security numbers through an appropriate DoD database or nationwide credit reporting agency. Upon information and belief, Westgate maintains the information electronically necessary to generate such a list necessary to identify the members of the Class.

88.   <u>Commonality</u>. Common questions of law and fact affect the rights of each Class member and common relief by way of declaration, injunction, restitution and/or damages is sought for Plaintiffs and Class members. Common questions of law and fact that affect all Class members include, but are not limited to:

a.   Whether Westgate entered into standard form Agreements with servicemembers and their dependents;

b.   Whether the Agreements constitute the extension of consumer credit under the MLA;

c.   Whether Westgate failed to provide required MLA written and oral disclosures;

d.     Whether Westgate failed to provide accurate MAPR disclosures;

e.     Whether Westgate's standard form Agreements contain arbitration clauses in violation of the MLA;

f.     Whether Westgate failed to determine if Plaintiffs and Class members were covered borrowers;

g.     Whether Westgate handled and had control over choosing the contents of the Agreements and the disclosures or lack thereof that accompanied them and whether to determine if Plaintiffs and Class members were covered borrowers;

h.     Whether Westgate, through any and all of its affiliated entities, is a person who violated the MLA and can be civilly liable therefore;

i.     Whether Westgate Palace, LLC, Westgate Resorts, Ltd., Central Florida Investments, Inc., Westgate Vacation Villas, LLC, CFI Resorts Management, Inc., and Westgate Resorts, Inc., are jointly and severally liable for the violations of the MLA committed by Westgate

Palace and/or Westgate Resorts, Ltd. and/or Westgate

Resorts, Inc.; and

j.  The remedies and damages to which Plaintiffs and the

Class are entitled to under 10 U.S.C. § 987.

89.  <u>Typicality</u>. The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class because they are covered borrowers under the MLA like the rest of the Class and their claims arise under the same legal theories and out of a common course of conduct by Westgate. The Agreement and Plaintiffs' transaction with Westgate are highly similar to the standardized Agreements and transactions between the other members of the Class and Westgate. Plaintiffs suffered statutory and actual damages of the same type and in the same manner as the Class they seek to represent. There is nothing peculiar about Plaintiffs' claims when compared to those of the other members of the Class.

90.  <u>Adequacy</u>. The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class. Plaintiffs have no conflict of interest that will interfere with maintenance of this class action. They have hired attorneys who likewise have no conflicts of

interest with the Class and who are experienced in prosecuting class action and consumer protection law claims and will adequately represent the interests of the Class.

## Rule 23 (b) Criteria

91.  <u>Predominance and Superiority</u>. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.  The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require a simple identification of those consumers who are covered members under the statute accomplished through an appropriate DoD database or nationwide credit reporting agency, an act that could have and should have been done at the time of application.

b.  Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

c. Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

d. Westgate resides in this District and violated the MLA within this District, making this Court appropriate for the litigation of the claims of the entire Class; there are very few attorneys in the United States with any expertise or experience in this nascent area of law making it nearly impossible for Class members to find adequate representation; and the claims of the individual Class members are small in relation to the expenses and efforts required by the litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

92. Westgate has acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole. Plaintiffs and the Class are entitled to a declaration that their Agreements are void and Westgate should be

enjoined from attempting to collect any monies pursuant to them or to enforce them in any way.

## COUNT I

### Violation of the Military Lending Act and Implementing Regulations
### (Lack of Disclosures and Mandatory Arbitration Agreement)

**A.    Applicability of the MLA.**

93.    Plaintiffs and the Class repeat and re-allege the allegations in paragraphs 1 through 92 as if set forth herein in full.

94.    Servicemember Plaintiff Adam Steines and Plaintiff Miranda Steines, his wife, and all the other members of the Class were "covered borrowers" and "covered members" as those terms are defined pursuant to 32 C.F.R. § 232.3(g).

95.    Westgate was a "creditor" which provided "consumer credit" to Plaintiffs and the Class as those terms are defined in 32 C.F.R. §232.3(f), (h) & (i).

**B.    Inadequate Disclosures - 10 U.S.C. § 987(c)(1) and 32 C.F.R. § 232.6.**

98.    Plaintiffs' and Class members' standard form Agreements and Closing Disclosures do not provide required MLA written disclosures in the manner required by 10 U.S.C. § 987 and 32 C.F.R. § 232.6. Neither

did Westgate separately provide the required oral disclosures to Plaintiffs and the Class.

99. Plaintiffs' and Class members' standard form Closing Disclosures provide standard TILA disclosures which do not include a MAPR and do include the non-acquisition costs (Plaintiffs' Exchange Membership Dues, Debt Waiver for Loss of Life, and Debt Waiver for Involuntary Unemployment, Developer Processing Fee, and Developer Administrative Fee) in the annual percentage rate stated in the disclosures and, therefore, under-disclosed the true cost of credit under the MLA to Plaintiffs and Class members under the Agreements. Because of the omission of the non-acquisition costs in calculation of the disclosed finance charges, Plaintiffs' and the Class's MAPRs are significantly higher than the finance charges and interest rates set forth in the Closing Disclosures and the interest rates stated in the Agreements, including the Notes. In the case of the Steines Family, their MAPR was at least 19.124%, which is 1.134% higher than the interest rate stated in the Agreement, including the Note.

100. 32 C.F.R. § 232.6 makes mandatory the following disclosures:

(a) Required information. With respect to any extension of consumer credit (including any consumer credit originated or

extended through the internet) to a covered borrower, a creditor shall provide to the covered borrower the following information before or at the time the borrower becomes obligated on the transaction or establishes an account for the consumer credit:

(1) A statement of the MAPR applicable to the extension of consumer credit;

(2) Any disclosure required by Regulation Z, which shall be provided only in accordance with the requirements of Regulation Z that apply to that disclosure; and

(3) A clear description of the payment obligation of the covered borrower, as applicable. A payment schedule (in the case of closed-end credit) or account-opening disclosure (in the case of open-end credit) provided pursuant to paragraph (a)(2) of this section satisfies this requirement.

....
(c) Statement of the MAPR—

(1) In general. A creditor may satisfy the requirement of paragraph (a)(1) of this section by describing the charges the creditor may impose, in accordance with this part and subject to the terms and conditions of the agreement, relating to the consumer credit to calculate the MAPR. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to describe the MAPR as a numerical value or to describe the total dollar amount of all charges in the MAPR that apply to the extension of consumer credit.

(2) Method of providing a statement regarding the MAPR. A creditor may include a statement of the MAPR applicable to the consumer credit in the agreement with the covered borrower involving the consumer credit transaction. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to

include a statement of the MAPR applicable to an extension of consumer credit in any advertisement relating to the credit.

(3) Model statement. A statement substantially similar to the following statement may be used for the purpose of paragraph (a)(1) of this section: "Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account)."

101. The annual percentage rate when properly calculated pursuant to the MLA is expressed as the Military Annual Percentage Rate or "MAPR" and should include: 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit pursuant to 32 C.F.R. § 232.4. Using an MAPR loan calculator, the true MAPR for the Steines Family was 19.124%, an amount higher than the 17.99% APR stated in the Closing Disclosure and the Agreement,

including the Note. **Exhibits A, B & F**.  For Plaintiffs and all the Class members, Westgate failed to disclose the MAPR in writing as set forth above. They also failed to do so orally. Each failure constituted a separate violation of the MLA.

## C.   Mandatory Arbitration – 10 U.S.C. § 987(e)(3).

102. Plaintiffs' and Class members' Agreements contain a mandatory arbitration addendum (**Exhibit C**), which states:

> In the event of any controversy between the parties**,** including but not limited to any claim, dispute, suit, demand, cross claim, counterclaim, or third party complaint (whether statutory, in tort, or otherwise) arising out of or relating to this Agreement or its negotiation, formation, execution, performance, breach, termination or enforcement, including claims arising from or relating to the collection of any debt arising hereunder (including, especially, but without limitation, claims under the Telephone Consumer Protection Act, Fair Debt Collection Practices Act, and Fair Credit Reporting Act, and comparable state laws) and the interpretation or validity, including the validity, scope or applicability of this provision to arbitrate, shall be determined by binding arbitration.

103. The MLA, 10 U.S.C. § 987(e)(3), declares that requiring covered borrowers to submit to arbitration is unlawful:

> (e) Limitations. —It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which—

(3) the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute.

104. Westgate's Agreement's mandatory arbitration provision violated Plaintiffs' and Class members' rights under the MLA, because the MLA expressly prohibits agreements that require arbitration to resolve disputes.

## D.   Relief to Which Plaintiffs and the Class Are Entitled

105. The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

106. The United States Supreme Court has held that "when Congress declare[s]in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979).   "By declaring certain contracts void, [the MLA] by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated

somewhere[,]" for "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid." *Id.* at 18. This scheme "displays a [congressional] intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Transamerica*, 444 U.S. at 15).

107.   Pursuant to this implied right of action, Plaintiffs and the Class seek: (1) a declaration that their Agreements were void from their inception, (2) an injunction against Westgate from seeking to enforce the payment obligations under the Agreements in any manner, (3) an injunction against Westgate requiring them not to make any negative reports or communications to any credit reporting agencies or anyone else about past or future nonpayment under the Agreements by Plaintiffs and the Class, (4) an injunction against Westgate requiring them to communicate to all the major credit reporting agencies that any prior negative reports about late payments or nonpayment by Plaintiffs and the Class were in error and should be removed from Plaintiffs' and the Class's credit reports and that the payment obligations of Plaintiffs and the Class have been satisfied, and (5) a judgment against Westgate for

all amounts paid by Plaintiffs and the Class in connection with or pursuant to the Agreements.

108.   10 U.S.C. § 987(5) provides for civil liability as follows:

**(5) Civil liability.**—

**(A) In general.** --A person who violates this section with respect to any person is civilly liable to such person for--

**(i)** any actual damage sustained as a result, but not less than $500 for each violation;

**(ii)** appropriate punitive damages;

**(iii)** appropriate equitable or declaratory relief; and

**(iv)** any other relief provided by law.

**(B) Costs of the action.** --In any successful action to enforce the civil liability described in subparagraph (A), the person who violated this section is also liable for the costs of the action, together with reasonable attorney fees as determined by the court.

109. Westgate is a person who violated the MLA as the term "person" is defined in the MLA.  Plaintiffs and the Class have suffered actual damages caused by Westgate's violations of the MLA because they paid money to Westgate based on illegal and void contracts, which they would not have paid but for being knowingly or negligently induced into illegal and void contracts. They are entitled to recover (via judgment

against Westgate) as actual damages the greater of all amounts they paid in connection with or pursuant to the Agreements or $1,500, which represents $500 for failing to give the required written disclosures, $500 for failing to give the required oral disclosures, and $500 for including an arbitration provision in the agreement. They are additionally entitled to a judgment against Westgate for all the equitable and declaratory relief set forth in paragraph 107, appropriate punitive damages and the costs of this action and reasonable attorneys' fees.

## COUNT II
### Violation of MLA and Corresponding Federal Regulations
### (32 CFR §§ 232.4(a), 232.9(e)(1))
### (Terms of Consumer Credit Extended to Covered Borrowers)

110.  Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 92 as if set forth herein in full.

111.  Under 10 U.S.C. § 987(a)(1) and 32 CFR § 232.4(a)(1), a creditor who extends consumer credit to a covered borrower may not require the covered borrower to pay an MAPR for the credit with respect to such extension of credit, except as agreed to under the terms of the credit agreement or promissory note.

112.  The true MAPR for the Steines Family was 19.124 % and not 17.99% as set forth in their Agreement and the Closing Disclosure.

**Exhibits A, B, F**. Because Westgate never included in the interest rates stated in the Agreements of the Class all the charges which must be included in the MAPR, all the members of the Class paid higher MAPRs than the interest rates stated in their Agreements.

113. Therefore, Westgate required Plaintiffs and the Class, all covered borrowers, to pay an MAPR for the credit that was higher than the rate that was agreed to and disclosed under the terms of their Agreements.

114. This rendered the Agreements void, entitling Plaintiffs and the Class to all the relief set forth in Paragraph 107 above.

115. As result of the violations of 10 U.S.C. § 987(a)(1) and 32 C.F.R. § 232.4(a)(1) by Westgate, Plaintiffs and the Class have suffered actual damages in the amounts of the interest they paid that exceeded the interest rates stated in their Agreements. Thus, pursuant to 10 U.S.C. § 987(5), they are entitled to a judgment against Westgate for the greater of that amount or $500, the equitable and declaratory relief set forth in Paragraph 107, appropriate punitive damages, and the costs of this action, including reasonable attorneys' fees.

## COUNT III
## Unjust Enrichment/Restitution

116.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 92 as if set forth herein.

117.   This Count for unjust enrichment is pled in the alternative to Counts I and II.

118.   As set forth above, Westgate violated the MLA in no less than four separate manners. The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

119. Under Florida common law, parties who benefit from contracts that are void *ab initio* because they violate public policy, or in this case violate the MLA and corresponding federal regulations, should not be able to retain the benefit they received as a result of any wrongdoing. *See Vista Designs v. Silverman,* 774 So. 2d 884 (Fla. 4th DCA 2001) (holding that because an appellee's actions constituted the unauthorized practice of law, he was not entitled to keep the monies paid to him under a fee agreement declared void *ab initio* based on quantum

meruit because public policy dictated that the appellee should not benefit from his wrongdoing).

120. The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

121. Here, the Plaintiffs and the Class conferred a benefit on Westgate by paying it under the illegal and void Agreements, payments which Westgate knew about.

122. Westgate voluntarily accepted and retained the benefits conferred on it by retaining the payments made under the illegal and void Agreements by Plaintiffs and the Class.

123. The circumstances render Westgate's retention of the benefits inequitable so Westgate must pay to Plaintiffs and the Class the value of the benefit conferred in the form of restitution, which value is all amounts they paid to Westgate in connection with or pursuant to the Agreements.

124.   As a result of Westgate's numerous violations of the MLA, the Agreements between Westgate and Plaintiffs and the Class were void from their inception, making it inequitable for Westgate to retain the benefits it received based upon the void Agreements, and requiring it to disgorge to Plaintiffs and the Class all amounts they paid in connection with or pursuant to the illegal and void Agreements.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request the Court enter order and judgment as follows:

A.   An order certifying this action to proceed as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing the undersigned as Class Counsel;

B.   A judgment declaring that Plaintiffs' and the Class's Agreements were void from the inception because they violated the MLA and awarding Plaintiffs' and the Class the equitable, declaratory and injunctive relief set forth above pursuant to their implied right of action under 10 U.S.C. § 987 and/or 10 U.S.C. § 987(5)(A)(iii) and/or restitution/unjust enrichment under Florida law;

C.     A judgment awarding Plaintiffs and Class members as actual damages the greater of all amounts they paid in connection with or pursuant to the illegal and void Agreements or $500 per MLA violation, together with appropriate punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

D.     A judgment awarding Plaintiffs and Class members as actual damages the greater of the MAPR interest they paid in excess of the interest rates stated in their Agreements or $500, together with appropriate punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

E.     A judgment awarding Plaintiffs and the Class reasonable attorneys' fees and costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

F.     A judgment awarding Plaintiffs and the Class all pre-judgment and post-judgment interest recoverable at law or in equity; and

G.     A judgment awarding Plaintiffs and the Class such other and further relief to which they are justly entitled.

## JURY TRIAL DEMAND

Plaintiffs and the Class demand a jury trial on all issues so triable.

Respectfully submitted this 16th day of January 2023.

VARNELL & WARWICK, P.A.

/s/ JANET R. VARNELL
JANET R. VARNELL; FBN:  0071072
BRIAN W. WARWICK; FBN:  0605573
Matthew T. Peterson, FBN: 1020720
Erika R. Willis, FBN: 100021
1101 E. Cumberland Ave.
Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352-504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*mpeterson@vandwlaw.com*
*ewillis@vandwlaw.com*
*kstroly@vandwlaw.com*

CRAIG E. ROTHBURD, P.A.
Craig E. Rothburd, FBN: 0049182
Dylan J. Thatcher, FBN: 1031532
320 W. Kennedy Blvd., #700
Tampa, Florida   33606
Telephone:(813) 251-8800
*craig@rothburdpa.com*
*dylan@rothburdpa.com*
*maria@rothburdpa.com*

JEEVES LAW GROUP, P.A.
Scott R. Jeeves, FBN: 0905630
Kyle W. Woodford, FBN: 1033490
2132 Central Avenue
St. Petersburg, Florida 33712
Telephone: (727) 894-2929
*sjeeves@jeeveslawgroup.com*
*kwoodford@jeeveslawgroup.com*
*rmandel@jeevesmandellawgroup.com*

*khill@jeeveslawgroup.com*

JEEVES MANDEL LAW GROUP, P.C.
Roger L. Mandel
(admitted *pro hac vice*)
2833 Crockett St, Suite 135
Fort Worth, TX  76107
Telephone: 214-253-8300
*rmandel@jeevesmandellawgroup.com*

***Counsel for Plaintiffs,
individually and on behalf of all
others similarly situated***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 16, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ JANET R. VARNELL
JANET R. VARNELL